646 P.2d 1230

Geraldine LOPEZ, Individually and as Personal Representative of the Estate of Rudolph A. Lopez, and Delfinia Torres, Individually and as Personal Representative of the Estate of Louis James Torres, Plaintiffs-Appellants,

v.

FOUNDATION RESERVE INSURANCE COMPANY, INC., a New Mexico corporation, Defendant-Appellee.

No. 13664.

Supreme Court of New Mexico.

March 12, 1982.

Shaffer, Butt, Thornton & Baehr, J. Duke Thornton, James Johansen, Albuquerque, for Torres.

Robert N. Singer, Timothy J. Dreher, Albuquerque, for Lopez.

Rodey, Dickason, Sloan, Akin & Robb, Jonathan W. Hewes, Albuquerque, for Foundation Reserve Ins. Co., Inc.

## OPINION

PAYNE, Justice.

The parties stipulated to the following facts. Rudolph Lopez and Foundation Reserve Insurance Company, Inc. (Foundation) entered into an insurance contract which covered two automobiles and included separate uninsured motorist coverage for each vehicle in the amount of $15,000 per person or $30,000 per accident. While driving one of the covered vehicles, Lopez and a passenger, Louis James Torres, were killed in a collision with an uninsured motorist. Plaintiffs, personal representatives of the estates of the decedents, demanded that Foundation pay $60,000 on grounds that the $30,000 per accident coverage on each vehicle should be "stacked" as if there were two separate policies. Foundation declined payment. Plaintiffs brought suit for declaratory judgment, and both parties moved for summary judgment. The court granted Foundation's motion and denied plaintiffs'. Plaintiffs appealed.

We consider for the first time whether an insured may aggregate or "stack" uninsured motorist coverage when more than one automobile is covered under a single policy. The issue has received considerable scrutiny in our sister states, but no consensus as to the proper result has emerged.

All motor vehicle insurers in New Mexico are required to provide uninsured motorist coverage under Section 66–5–301, N.M.S.A. 1978 (Cum.Supp.1981). In compliance with this statutory requirement, Foundation included the following coverage:

COVERAGE J—UNINSURED MOTORISTS

I. To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of:

(a) bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured; * * * caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle * * *.

Foundation also included the following provision in order to limit its liability under Coverage J:

6. Limits of Liability.

(a.) The company's limit of bodily injury liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person in any one accident shall not exceed the amount specified by the financial responsibility law [of New Mexico] for bodily injury to one person in any one accident * * *. [T]he company's limit of liability for all such damages arising out of bodily injury sustained by two or more persons in any one accident shall not exceed the amount specified by such financial responsibility law for bodily injury to two or more persons in any one accident.

Section 66–5–222, N.M.S.A.1978, provides for limitations on the amounts recoverable: *Payments sufficient to satisfy requirements.*

A. Judgments herein referred to shall, for the purpose of the Fina..cial Responsibility Act [66–5–201 to 66–5–248 N.M.S.A.1978] only, be deemed satisfied:

(1) when fifteen thousand dollars ($15,000) has been credited upon any judgment or judgments rendered in excess of that amount because of bodily injury to, or death of one person as the result of any one accident; * * *

* * * * * *

B. However, payments made in settlements of any claims because of bodily injury, death or property damage arising from such accident shall be credited in reduction of the amounts provided for in this section.

I.

■ Foundation asserts that the policy is unambiguous and should therefore be enforced to limit plaintiffs' recovery to $30,000. We cannot agree that the policy is unambiguous. On its face, the limitation clause in this case appears to limit Foundation's liability for bodily injury to the statutory minimum of $15,000 per person or $30,000 per occurrence. However, nowhere in the contract is there any mention of the effect of multiple premiums paid under one policy insuring more than one vehicle.

Other states interpreting language similar to that in Foundation's limitation of liability clause have found it ambiguous. Once the ambiguity is found, the contract is construed against the insurance ▪company which drafted the clause. *E.g., Goodman v. Continental Casualty Company,* 347 A.2d 662 (Del.Super.1975); *Hartford Acc. & Indem. Co. v. Bridges,* 350 So.2d 1379 (Miss. 1977); *Mountain West Farm Bureau v. Neal,* 169 Mont. 317, 547 P.2d 79 (1976). One court reached the same result even where the limitation was preceded by the phrase "Regardless of the number of insureds * * *." *O'Hanlon v. Hartford Acc. & Indem. Co.,* 439 F.Supp. 377, 385 (D.Del. 1977). We follow this approach and hold that the policy is ambiguous. Therefore, the trial court erred in granting Foundation's motion for summary judgment.

Because the policy is ambiguous, judicial construction of its terms is required to give it effect. Since construction of an ambiguous contract depends on extrinsic facts and circumstances, the terms of the agreement become questions of fact. *Young v. Thomas,* 93 N.M. 677, 604 P.2d 370 (1979). In normal situations, we would remand to the trial court for the findings necessary for a proper interpretation of the contract. *Id.* Here, however, the parties have stipulated to the essential facts. In addition, this case presents a question of first impression in New Mexico. Other cases are pending in both the state and federal courts which require resolution of this question. Therefore we proceed to construe the policy.

II.

The term "stacking" refers to an insured's attempted recovery of damages under more than one policy, endorsement or coverage "by placing one policy, endorsement, or coverage, etc. upon another and recovering from each in succession until either all of his damages are satisfied or until the total limits of all policies, endorsements, coverages, etc. are exhausted, even though the insured has not been fully in-

demnified." Davis, *Stacking of Uninsured Motorist Insurance*, in N.H. Bar Ass'n C.L.E. Handbook 33, 36–37 (1980). We upheld interpolicy stacking in *Sloan v. Dairyland Insurance Company*, 86 N.M. 65, 519 P.2d 301 (1974), but had not been presented with the problem of intra-policy stacking until now.

■ When someone purchases general uninsured motorist coverage he is insured against bodily injury in at least five situations:

1) as a pedestrian;

2) as a passenger in someone else's insured car;

3) as a passenger in an uninsured car;

4) while in his own insured car; and

5) for injuries suffered by passengers riding in his own insured car.

*See Chavez v. State Farm Mutual Automobile Ins. Co.*, 87 N.M. 327, 533 P.2d 100 (1975). He also obtains a minimum amount of insurance against property damage to the insured vehicle. The problem of intra-policy stacking arises when two or more vehicles are insured under one policy, with separate premiums paid for each. The insured may argue that he has paid more than once for each of the types of bodily injury coverage since the coverage is not related to a specific insured vehicle, and should therefore receive multiple coverage. For example, if the insured, while walking down the street, is struck by an uninsured motorist and suffers injury in excess of the minimum coverage provided by one payment of uninsured motorist premium, should he not get the benefit of the multiple premiums he paid? The same argument applies in the case at bar, where the decedents were occupying one of two insured vehicles.

In deciding this issue, we feel it is useful to review and analyze *Sloan, supra*, which also involved uninsured motorist coverage. The suit was brought under an insurance policy owned by the deceased herself. She was killed while a passenger in another's vehicle as the result of a collision caused by an uninsured motorist. The executor of her estate collected the statutory minimum benefit under the policy covering the vehicle in which she was riding. Her own insurance company denied payment, claiming as a defense a standard "other insurance" limitation clause. We held that recovery under the deceased's policy could be "stacked" upon the benefits paid under the vehicle-owner's policy.

Appellant urges that our legislature's true intention was to provide for $10,000 of minimum protection for those injured by uninsured motorists, and no more. It says that otherwise the estate here would receive a "windfall" not contemplated by the legislature, and that the estate would receive more than would have been the case had Mr. Vallejos [the uninsured motorist] had the minimum liability coverage * * *.

We do not agree with the reasoning of appellant * * *. We find in our statutory scheme a minimum uninsured motorist coverage without difficulty, but are unable to perceive a maximum. Had the legislature intended the $10,000 to be both a minimum and a maximum it could easily have said so, but it did not. Nor do we view the recovery allowed by the court below as being a "windfall". The total damages suffered by the estate exceed the total recovery. On the other hand appellant is seeking to avoid coverage for which it contracted and received a premium.

*Sloan, supra*, 86 N.M. at 68, 519 P.2d at 304.

The reasoning adopted in the *Sloan* case is applicable to the issue in the present case.

### A.

"[T]he clear trend of late has been in favor of stacking." *Taft v. Cerwonka*, R.I., 433 A.2d 215, 218 (1981) (citations omitted). The courts of other jurisdictions have advanced several rationales in support of intra-policy stacking of uninsured motorist benefits. In *Sellers v. United States Fidelity & Guaranty Co.*, 185 So.2d 689 (Fla.1966), cited with approval in *Sloan, supra*, the Florida court held that the "other insurance" limitation clause violated the Florida

uninsured motorist statute. The *Sellers* rationale was extended to intra-policy stacking in *Tucker v. Government Employees Insurance Co.*, 288 So.2d 238 (Fla.1973).[1] Other states have also permitted intra-policy stacking on grounds that the attempted limitation was void as against the policy of the relevant statute. *See General Mutual Insurance Company v. Gilmore*, 294 Ala. 546, 319 So.2d 675 (1975); *Great Central Insurance Company v. Edge*, 292 Ala. 613, 298 So.2d 607 (1974); *Barbin v. United States Fidelity And Guaranty Co.*, 315 So.2d 754 (La.1975); *Wilkinson v. Fireman's Fund Insurance Co.*, 298 So.2d 915 (Ct.App.), *appeal dismissed*, 309 So.2d 657 (La.1974); *Ohio Cas. Ins. Co. v. Stanfield*, 581 S.W.2d 555 (Ky.1979); *Chaffee v. U. S. Fid. & Guar. Co.*, 591 P.2d 1102 (Mont.1979); *Cameron Mut. Ins. Co. v. Madden*, 533 S.W.2d 538 (Mo.1976); *State Farm Mut. Auto Ins. Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978); *American States Ins. Co. v. Milton*, 89 Wash.2d 501, 573 P.2d 367 (1978); *Federated American Ins. Co. v. Raynes*, 88 Wash.2d 439, 563 P.2d 815 (1978).

Our own statute, Section 66–5–301, is virtually identical to those of thirty-three other states, including all of those jurisdictions just cited, whose courts have held the limitations on stacking to be against statutory policy. *Davis, supra,* at 131 n.11. A decisive consideration of those cases was that the uninsured motorist coverage protects against bodily injury and does not relate to coverage of a particular vehicle.

■ Foundation's position in this case is based on an interpretation of Section 66–5–301 which requires that separate full uninsured motorist coverage be provided for each vehicle. However, we adopt the better reasoned interpretation that the statute requires only that each of several vehicles insured under a single policy be covered by one minimum coverage with no need for separate full coverage for each.

Other states have construed their statutes as requiring only minimum coverage for each policy. "The requirement of the statute is that every automobile liability insurance *policy* include uninsured motorists coverage." *Pettid v. Edwards*, 195 Neb. 713, 240 N.W.2d 344, 347 (1976). Accordingly, each of several vehicles insured under a single policy need not have separate coverage as long as one minimum coverage applies to each. *Holland v. Hawkeye Security Insurance Company*, 230 N.W.2d 517 (Iowa 1975); *Pettid v. Edwards, supra; Weemhoff v. Cincinnati Insurance Co.*, 41 Ohio St.2d 231, 325 N.E.2d 239 (1975).

The intent of the legislation is to assure that no insured motorist will remain uncompensated for injuries caused by an uninsured motorist. *Chavez v. State Farm Mutual Automobile Ins. Co., supra.* The Legislature has established a minimum amount of liability coverage, and has required that all policies provide uninsured motorist coverage of this minimum amount. The desired result is that an injured insured receive the same compensation when injured by an uninsured motorist as he would receive if the other motorist had carried the minimum amount of liability insurance provided by statute. We do not find any legislative intent to relate the required amount of coverage to the number of vehicles owned and insured under one policy. We therefore hold that the statute does not require separate full uninsured motorist coverage for each vehicle insured under a single policy. However, this does not preclude purchase of additional coverage beyond the statutory minimum.

### B.

■ Another reason for intra-policy stacking is that it fulfills the reasonable expectations of the insured. *See Allstate Ins. Co. v. Maglish*, 94 Nev. 699, 586 P.2d 313 (1978). Numerous courts have also permitted stacking on the ground that payment of two premiums entitles the insured to two recoveries. *See, e.g., Curran v. Fireman's Fund Insurance Company*, 393

---

1. In 1977 Florida's legislature specifically prohibited intra-policy stacking. Fla.Stat. § 627.-4132 (1977). This provision was later amended so as to not apply to uninsured motorist coverage. Fla.Stat. § 627.4132 (1981), and is entirely repealed effective October 1, 1982.

F.Supp. 712 (D.Alaska 1975); *Lambert v. Liberty Mutual Insurance Company*, 331 So.2d 260 (Ala.1976); *Squire v. Economy Fire & Cas. Co.*, 69 Ill.2d 167, 13 Ill.Dec. 17, 370 N.E.2d 1044 (1977); *United Sec. Ins. Co. v. Mason*, 59 Ill.App.3d 982, 17 Ill.Dec. 507, 376 N.E.2d 653 (1978); *Sturdy v. Allied Mutual Insurance Company*, 203 Kan. 783, 457 P.2d 34 (1969). These two rationales are closely related and we find them persuasive.

*Sloan, supra,* would permit stacking where several automobiles, owned by one individual, are insured under separate policies. It would be inconsistent to permit stacking in *Sloan* cases and deny stacking in cases where all the vehicles are insured under one policy but the same additional premiums are charged as would be charged if the coverage were provided by multiple policies. In *Sloan,* we stated that we cannot condone an insurance company's "seeking to avoid coverage for which it contracted and received a premium." *Sloan, supra,* 86 N.M. at 68, 519 P.2d at 304. The crucial question, therefore, is not whether multiple vehicles are insured under one policy or several, but whether the insured has paid one premium or several for the particular uninsured motorist coverage sought to be stacked.

Where an insurance company charges a separate full uninsured motorist premium for each vehicle under a single or several policies, it is only fair that the insured be permitted to stack the coverages for which he has paid. Even where the second premium is reduced, fairness may require stacking. For example, in *Federated American Ins. Co. v. Raynes, supra,* the premium was reduced by $5.00 for the second and third vehicles. Yet the court stated:

> In this present case, respondent is entitled to recover under his policy with FAI because uninsured motorist coverage protects an insured, even though he was not occupying a vehicle named in the policy. If we limit respondent's uninsured motorist coverage to $15,000.00, he will not have gained anything by paying the second premium, because the uninsured

motorist premium which he paid for his car would cover the $15,000.00. In effect, FAI will have gained a windfall by collecting the second premium.

> We hold that the number of uninsured motorist coverages on which an insured is entitled to rely is determined by the number of premiums paid and not by the number of policies under which the cars are insured.

563 P.2d at 820.

## C.

■ Courts in other jurisdictions have peremptorily held, without evidence, both that there is and that there is not additional risk incurred in insuring additional vehicles. *Compare, e.g., Allstate Company v. McHugh,* 124 N.J.Super. 105, 304 A.2d 777 (1973), *affirmed,* 126 N.J.Super. 458, 315 So.2d 423 (1974), *with, e.g., Chaffee v. U. S. Fid. & Guar. Co., supra.* We decline to make such a determination as a matter of law.

There may be circumstances in which insurance companies may cover multiple vehicles in one policy and charge multiple premiums yet not make multiple payments for a claim related to one vehicle. Unlike most states with comparable statutes, New Mexico requires minimum property damage coverage under its financial responsibility law. This requirement may justify some additional premium charge for each additional vehicle, depending on the added risk incurred. Also, the additional risk accruing by covering passengers in additional insured vehicles may justify another premium for each additional vehicle.

Whether stacking is to be permitted depends on the evidence presented in each case. The insured has the initial burden of proving that he paid multiple premiums for uninsured motorist coverage. Once he makes that showing, the burden shifts to the insurance company to prove that it did not charge multiple premiums for the same coverage.

## III.

On remand, the district court must apply the principles outlined above to two specific individuals—Lopez, as the named insured, and Torres, as a passenger in an insured vehicle.

 The uninsured motorist premium charged for the second car was one dollar less than that charged for the first car. In its motion for summary judgment, Foundation stated that:

> [T]his lesser charge recognized the lesser likelihood of both vehicles being operated at the same time and therefore being "at risk" at the same time. The fact that a premium was charged recognized that there might be times when both vehicles were being operated and were therefore "at risk."

This language does not indicate that a lesser premium was charged because the only additional coverage it purchased was for passengers in the car and for property damages. Had that been the case, there could be no stacking because there would be no double payment for a single coverage. Instead, it appears that the premium was reduced because of the decreased likelihood that a covered injury would occur through use of the *second* car. Upon payment of the second premium, Lopez paid a second time for coverage of personal injuries suffered as a pedestrian or as an occupant in any vehicle. Coverage of Lopez' personal injuries should therefore be stacked.

However, uninsured motorist coverage of passengers who are not named insureds applies only to passengers injured while occupying an insured vehicle. If Lopez had insured only one vehicle, and he and Torres were occupying an uninsured vehicle when injured, Lopez would be covered under the policy on the first car but no coverage would extend to Torres. Accordingly, Torres' coverage is limited to the coverage purchased on the vehicle in which he was riding. *See Holloway v. Nationwide Mut. Ins. Co.*, 376 So.2d 690 (Ala.1979).

Each separate premium payment entitled Lopez and other named insureds to a maximum recovery of $15,000 per person or $30,-000 per occurrence. Torres, whose coverage is limited to that purchased with the premium on the actual vehicle he was occupying, may recover only up to the $15,000 per person paid for by that premium.

Therefore, the judgment is reversed and the cause is remanded to the district court for such further action as is consistent with this opinion.

IT IS SO ORDERED.

EASLEY, C. J., and RIORDAN, J., concur.