2006-NMCA-058

135 P.3d 237

John **REHDERS** and Shirley Rehders, husband and wife, d/b/a John G. Rehders, General Contractor, and Robert "Robbie" Rehders, Plaintiffs–Appellees,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant–Appellant.

No. 25,284.

Court of Appeals of New Mexico.

April 11, 2006.

Certiorari Granted, No. 29,763, May 23, 2006.

As Corrected June 5, 2006.

David J. Berardinelli, Santa Fe, NM, for Appellees.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Lisa Mann, Jennifer A. Noya, Albuquerque, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} Summary judgment was granted entitling Plaintiff Robert "Robbie" Rehders (Son) to stacked uninsured motorist coverage under a corporate commercial auto policy issued to a corporation owned by Plaintiffs John Rehders and Shirley Rehders (Parents). Son was not in a vehicle insured by the corporation at the time of the accident, and he is not in any way connected with the corporation as an officer, stockholder, employee, agent, or in any other capacity. Allstate appeals, arguing that Son is not an insured under the corporate commercial auto policy issued to Parents' corporation, and therefore not entitled to any UM benefits. We agree and reverse with instructions to enter judgment in favor of Allstate.

## BACKGROUND

{2} On August 26, 2002, Son was a back seat passenger in a vehicle insured by Dairyland Insurance Company when it was struck by an uninsured vehicle, resulting in severe injuries to Son. Son settled his uninsured motorist (UM) claim with Dairyland for its policy limits. Son also made a claim for UM coverage with Allstate, which insured Parents' two personal automobiles. Even though he was an adult, Son was living with Parents at the time of the accident and was therefore covered as a Class 1 insured under that policy. Allstate also paid Son underinsured motorist (UIM) policy limits under Parents' personal policy.

{3} Son made a third claim for UM/UIM coverage on a commercial policy of John G. Rehders General Contractor, Inc. This company is a sub-chapter S corporation whose sole stockholders are Parents. At the time of the accident the corporation insured seven vehicles under a corporate commercial auto policy issued by Allstate with a UM endorsement covering each vehicle for $250,000. Son was not listed as a driver or a named insured under the corporate commercial auto policy, nor was he an officer, employee, stockholder, or agent of the corporation at the time of the accident. Nevertheless, Son asserted he was covered under the UM endorsement and entitled to stack the UM coverage of all seven vehicles for a total of $1,750,000. Allstate denied coverage.

{4} Parents and their adult Son therefore filed a verified complaint for a declaratory judgment that Son is entitled to stack the UM coverage for the seven vehicles insured by the corporation. Simultaneous with the complaint, Plaintiffs also filed a motion for summary judgment. Since the corporate commercial auto policy excluded stacking of UM coverages unless the business was an individual sole proprietorship even though a separate UM premium was paid for each vehicle, they sought a judgment declaring the exclusion invalid. They asserted that the motion did "*not* raise the issue of *who* could benefit from UM stacking" because if the policy validly prohibited stacking of UM coverages, "then the issue of *who* would benefit is moot." (Emphasis added.)

{5} Allstate answered the complaint, denying coverage on grounds that Son is not an "insured" under the corporate commercial auto policy. In response to Plaintiffs' motion for summary judgment, Allstate argued in part that Plaintiffs were attempting to "put the cart before the horse" by seeking a declaration that Allstate is required to stack UM coverages under the corporate commercial auto policy. It argued that even where an insurance policy expressly allows stacking, it is only required if the claimant is an "insured" under the policy. Since Son is not an "insured" under the express terms of the corporate commercial auto policy, Allstate argued that Plaintiffs' arguments were premature and irrelevant.

{6} The summary judgment pleadings disclose that Parents started the company "John G. Rehders, General Contractor" in 1983, as a sole proprietorship. From 1983 until 2001, Parents purchased commercial auto insurance policies from Allstate and paid a separate premium for UM coverage on each vehicle owned by the business. Under

those policies, the form of business of the named insured was designated as "individual/husband and wife/sole proprietorship," and Parents contended that as a result of this designation, there was UM coverage for parents individually and any family members resident in their household. The last such policy was in effect through September 13, 2001, (prior to Son's injury) and if the accident had occurred on or before September 13, 2001, Plaintiffs argued, Son would have been entitled to stack the UM coverage for each separately insured vehicle.

{7} In September 2001, Parents notified Allstate that they had changed the business from a sole proprietorship to a sub-chapter S corporation, and they requested that the policy be changed to reflect the change in the form of the business. Allstate thereupon issued a new policy which was in effect for the period from September 14, 2001 until September 14, 2002. The "named insured" was changed from "John G. Rehders, General Contractor" to "John G. Rehders General Contractor, Inc.," and the "form of named insured's business" was changed from "individual" to "corporation." However, substantially the same separate premium was charged and paid for UM coverage on each separately insured business vehicle. This was the policy in effect at the time of Son's accident.

{8} Plaintiffs argued that Parents intended the new policy to have the same coverage as the prior policy, and since Allstate did not provide them with a separate notice (apart from the policy itself) that changing the form of the insured from a sole proprietorship to a corporation would change the right to stack UM coverage, an ambiguity resulted. Further, Plaintiffs asserted, the ambiguity must be resolved in favor of stacking, notwithstanding any provisions in the corporate commercial policy which prohibit UM stacking. Father's affidavit was submitted concerning the change. In pertinent part, he said:

3. When [Wife and I] initially purchased auto insurance coverage for our business from Allstate in 1983, I intended and expected, as the overall manager of the business, for this business insurance coverage to protect and benefit myself and my wife as the owners of our family business. I also intended and expected our business policy to provide our children residing in our household with the benefit and protection of any coverages applicable to them.

. . . .

6. Allstate never explained or informed us, either before or at the time the 2001 business policy was issued, that there would be a substantial reduction in the insurance protection afforded under the policy to myself, my wife and our resident children as a result of this change in the form of our family owned business. I always believed that our business policy in 2001 provided the same benefits and protection as it had between 1983 and 2000.

7. When we purchased business auto coverage in 2001 from Allstate I still intended and expected, as the overall manager of the business, for this business insurance coverage to protect and benefit myself and my wife as the sole owners of our family business. I also still expected and intended the policy to continue to provide our children residing in our household with the same benefits and protection in 2001 as it had in 2000.

{9} Allstate filed its own motion for summary judgment, seeking a ruling that Son was not an insured under the corporate commercial auto policy and therefore not entitled to stacked UM coverage, and Plaintiffs responded, repeating many of the same arguments they made in support of their own motion for summary judgment. Plaintiffs added that since a corporation cannot sustain bodily injury, and the object of UM coverage is to protect persons who suffer bodily injury by an uninsured motorist, providing UM coverage to a corporation by itself makes no sense. Therefore, Plaintiffs asserted, the policy must be construed to apply to persons, even if the named insured is a corporation, and when a policy is issued to a small family business, the logical persons to have coverage are Parents and family members living with them. Thus, the same coverages and same policy objectives are achieved as in the case where an individual is the named in-

sured and pays separate premiums for UM coverage on separate vehicles. Finally, Plaintiffs argued that the policy definitions relating to an "insured" for UM coverage are "ambiguous, if not inscrutable, to the average insured" and the ambiguities should be resolved in their favor. In reply, Allstate argued that public policy does not favor stacking in the case where a corporation is the named insured, and that the pertinent policy language is not ambiguous.

{10} The district court did not rule on Allstate's motion, and granted summary judgment in favor of Plaintiffs to allow Son to stack UM coverage for each of the seven vehicles insured under the corporate commercial auto policy. Pertinent to this appeal, the district court made the following findings:

> 1. The premiums paid under the subject policy were paid by or for the benefit of the John and Shirley Rehders and their family, as the exclusive owners and operators of the family business. The insured paid the separate and multiple underinsured/uninsured motorist ("UM") coverage premiums on each of the 7 vehicles insured under the policy.
>
> 2. A reasonable insured reading the policy terms would think that they are paying more than one premium for more than one coverage.
>
> 3. The insureds are entitled to the benefit of what they have paid for.
>
> 4. The insured's reasonable expectation under this policy was always to provide John and Shirley Rehders and their family with the benefit of stacking the multiple UM coverages purchased under their business policy.
>
> 5. Allstate's policy exclusion does not validly prohibit UM stacking where Allstate clearly charges multiple, separate UM premiums for each vehicle insured.

{11} Allstate appeals, arguing that the district court erred when it ruled that stacking is required under the policy without first determining whether Son is insured under the policy, because being insured is a precondition to receiving stacked coverage. Allstate further argues that Son is not an "insured" under the unambiguous terms of the corporate commercial auto policy. Plaintiffs argue that the district court's order should be affirmed on public policy grounds because: (1) the definition of who is insured in the policy is ambiguous and it should therefore be construed against Allstate and in Son's favor; (2) Plaintiffs had a reasonable expectation of stacked coverage for Son; and (3) the policy definitions that exclude Son as an insured are void because the definitions, in effect, prohibit UM stacking, and thus violate the public policy of New Mexico.

## STANDARD OF REVIEW

{12} Summary judgment is proper only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 1–056 NMRA. The movant has the initial burden to show that there is no genuine issue as to a material fact and that judgment in its favor is therefore appropriate. *Spencer v. Health Force, Inc.,* 2005–NMSC–002, ¶ 7, 137 N.M. 64, 107 P.3d 504. The burden then shifts to the opponent to show at least a reasonable doubt as to the existence of a genuine issue of fact. *Id.* We view the facts in a light most favorable to the party opposing summary judgment, and draw all reasonable inferences in favor of a trial on the merits. *Id.* Where the material facts are undisputed, leaving only legal questions, our review of the district court order granting summary judgment is de novo. *Ocana v. Am. Furniture Co.,* 2004–NMSC–018, ¶ 12, 135 N.M. 539, 91 P.3d 58; *Barncastle v. Am. Nat'l Prop. & Casualty Cos.,* 2000–NMCA–095, ¶ 5, 129 N.M. 672, 11 P.3d 1234.

## DISCUSSION

### A. Son Is Not an "Insured" Under the Corporate Commercial Auto Policy

{13} Allstate argues that before deciding whether stacked UM coverage is available under the corporate commercial auto policy, the first question which must be resolved is whether Son is an "insured" under the policy. We agree. It is fundamental that a person must be insured under an insurance policy to be entitled to receive benefits pursuant to the policy.

{14} "Stacking refers to an insured's attempted recovery of damages by aggregat-

ing the coverage under more than one policy or under one policy covering more than one automobile." *Gamboa v. Allstate Ins. Co.,* 104 N.M. 756, 757, 726 P.2d 1386, 1387 (1986). It follows that "the 'stacking' issue arises only when it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an insured under those policies." *Id.* at 758, 726 P.2d at 1388 (citing *Seaton v. Kelly,* 339 So.2d 731, 733 (La.1976)); *see Lucero v. N.M. Pub. Sch. Ins. Auth.,* 119 N.M. 465, 466, 892 P.2d 598, 599 (1995) (holding that claimant not entitled to UM coverage because she was not an "insured" as defined in the policy); *Jaramillo v. Providence Wash. Ins. Co.,* 117 N.M. 337, 343, 871 P.2d 1343, 1349 (1994) ("The burden of proof is on the claimant to show that he or she belongs to the class of intended beneficiaries."); *Konnick v. Farmers Ins. Co. of Ariz.,* 103 N.M. 112, 115–16, 703 P.2d 889, 892–93 (1985) (holding that step-daughter was an "insured" under the policy and entitled to stack underinsured motorist coverage).

■ {15} It is not our task to determine *who* may stack coverage under the policy, it is our task to determine whether Son himself is entitled to stacked UM coverage. *See Jaramillo,* 117 N.M. at 342, 871 P.2d at 1348. We make this determination by analyzing whether Son was covered by the UM endorsement of the policy, which presents a question of law. *See Gamboa,* 104 N.M. at 758, 726 P.2d at 1388 (stating that when reviewing policy coverage, the language of the policy must be given its natural and ordinary meaning unless the language is ambiguous). While we determine whether the insurance policy is ambiguous as a question of law, *Richardson v. Farmers Insurance Co. of Arizona,* 112 N.M. 73, 74, 811 P.2d 571, 572 (1991), we remain mindful that "the language at issue should be considered not from the viewpoint of a lawyer, or a person with training in the insurance field, but from the standpoint of a reasonably intelligent layman, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words." *Rummel v. Lexington Ins. Co.,* 1997–NMSC–041, ¶ 19, 123 N.M. 752, 945 P.2d 970 (internal quotation marks and citation omitted).

■ {16} Plaintiffs' briefs suggest that the failure to set forth the complete name of the corporation in the endorsement somehow misled them. However, the policy was specifically changed at the request and direction of Parents to reflect that the corporation is the insured, and the policy documents as a whole clearly demonstrate that the insured is the corporation. Moreover, the suggestion is not supported by any facts establishing that Parents believed anyone other than the corporation was the insured, and it is undisputed that the corporation was in fact the insured. Therefore, we do not further discuss or consider the suggestion. The UM endorsement of the policy states, consistent with the wishes of Parents, that the "Named Insured" is the corporation "John G. Rehders General." The UM endorsement then explicitly defines who is an insured for UM coverage. It states:

If the *Named Insured* is designated in the Declarations as:

1. *An individual,* then the following are "insureds":

a. Any Class 1 "insured", meaning the Named Insured and any "family members".

b. Anyone other than a Class 1 "insured" "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, *corporation* or any other form of organization, then the following are "insureds".

a. Any Class 2 "insured", meaning the Named Insured is not an individual Named Insured.

b. Anyone other than a Class 1 "insured" while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered auto

must be out of service because of its breakdown, repair, servicing, "loss" or destruction. Anyone other than a Class 1 "insured" includes the Named Insured's partners (if the Named Insured is a partnership), or members (if the Named Insured is a limited liability company), "employees", directors or shareholders;

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

(Emphasis added.) Considering the foregoing language in accordance with the usual and natural meaning of the words used from the standpoint of a reasonably intelligent layman, we discern the following.

{17} First, the UM endorsement establishes two classes of an "insured" by reference to whether the "named insured" is an individual or a business organization. Unless Son qualifies as a "Class 1 insured" or a "Class 2 insured" he is not an "insured" qualified to receive UM benefits under the express terms of the policy.

{18} Second, Son does not qualify as a "Class 1·insured" under the terms of the policy because the "named insured" is not an individual, but the corporation, John G. Rehders General Contractor, Inc. An "insured" falls into "Class 1" only when an individual is designated in the declarations as the "named insured." A "Class 1 insured" is then specifically described as that person and any "family member" of that person. A separate provision of the policy defines "family member" as "a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child."

{19} Third, any other "insured" falls into "Class 2." A "Class 2 insured" is specifically described as a·partner of the partnership, a member of the limited liability company and employees, directors, and stockholders of the corporation where a partnership, limited liability company, or corporation is designated in the declarations as the named insured. Son is not an employee, director, or stockholder of John G. Rehders General Contractor, Inc., the corporation designated in the

declarations as the named insured. Therefore, he does not satisfy this criteria. A "Class 2 insured" also specifically includes a person "occupying" a "covered 'auto'" or a "temporary substitute for a covered auto" which was "out of service because of its breakdown, repair, servicing, 'loss,' or destruction" at the time of the accident, and a person who is seeking to recover because of bodily injury sustained by someone else insured under the policy. There is no claim or evidence that Son satisfies any of these criteria either. Son is therefore not a "Class 2 insured."

{20} Both New Mexico case law and cases from other jurisdictions demonstrate that individuals who fail to meet the definition of "insured" as unambiguously defined by the policy language cannot stack UM coverage under the policy. In *Gamboa*, the plaintiff's decedent was a passenger in his father's Chevrolet that was driven by his friend. The decedent and the driver were both killed in a head-on collision with an uninsured motorist. 104 N.M. at 757, 726 P.2d at 1387. The insurer of the Chevrolet paid the estates of the decedent and the driver the limits of its UM coverage. The plaintiff also sought UM coverage under a policy insuring a Ford owned by the driver's father that was not in any manner involved in the accident. The Supreme Court framed the sole issue on appeal as whether the decedent was an "insured" under both policies and therefore allowed to stack the UM coverages of the Chevrolet and the Ford. 104 N.M. at 757–58, 726 P.2d at 1387–88. In deciding this question of law, our Supreme Court specifically said that it "'must look to the provisions of the policy; if the terms of the policy are not ambiguous, the language used must be given its natural and ordinary meaning.'" *Id.* at 758, 726 P.2d at 1388 (quoting *Sears v. Wilson*, 10 Kan.App.2d 494, 704 P.2d 389, 390 (1985)). The Supreme Court concluded that the decedent was not an "insured" under the clear, unambiguous terms of the policy providing UM coverage for the Ford. Therefore, he was not entitled to stacked UM coverage. *Gamboa*, 104 N.M. at 760, 726 P.2d at 1390.

{21} In *Herrera v. Mountain States Mutual Casualty Co.*, 115 N.M. 57, 846 P.2d

1066 (1993), the plaintiff was injured in an accident while occupying an automobile owned by her parents and operated by her mother. *Id.* at 58, 846 P.2d at 1067. The plaintiff attempted to stack the UM coverage of four trucks owned by a corporation which employed her father. *Id.* Our Supreme Court affirmed the district court order granting summary judgment to the insurer, because the plaintiff was not insured under the unambiguous language of the commercial policy issued to the corporation. *Id.* at 59, 846 P.2d at 1068.

{22} Finally, in *Lucero,* the plaintiff was injured while driving a vehicle owned and insured by her employer, and she sought damages under the UM coverage provided for the automobile. 119 N.M. at 465–66, 892 P.2d at 598–99. The policy expressly excluded UM coverage for injuries suffered by employees in the course of their employment. *Id.* at 466, 892 P.2d at 599. Our Supreme Court held as a matter of law that the plaintiff was not entitled to UM benefits given her status under the express terms of the policy. *Id.*

{23} The trial court did not find the applicable language of the policy ambiguous, and neither do we. In *American Economy Insurance Co. v. Bogdahn,* 2004 OK 9, ¶ 0, 89 P.3d 1051, the insured was a closely-held corporation which operated a pharmacy. The UM endorsement identified the pharmacy as the sole "named insured" and listed the "form of business" as a "corporation." *Id.* ¶ 7 (internal quotation marks omitted). In part, the endorsement defined "who is an insured" as "1. You [; and] 2. If you are an individual, any 'family member.' " A "family member" was then defined as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." *Id.* The court concluded that the word "You" was not susceptible to interpretation: it plainly referred to the corporation as the named insured. Just as clearly, since the named insured was not an individual, family members were not insured. *Id.* ¶ 13. Therefore, the owner's minor son was not entitled to UM benefits. *Id.* The court noted that the vast majority of jurisdictions conclude as a matter of law that

similar policy language is not ambiguous. *Id.* ¶ 20 & n. 3.

{24} We conclude that Son is not an "insured" under the clear, unambiguous language of the UM endorsement and not entitled to any UM benefits under the corporate commercial auto policy issued to John G. Rehders General Contractor, Inc. Since he is not entitled to UM coverage, he is not entitled to stacked UM benefits.

## B. The Insured's Reasonable Expectations and Public Policy

{25} The district court granted Plaintiffs summary judgment on public policy grounds. It concluded that the reasonable expectation of Parents was that they had purchased stacked UM coverage for themselves and their family and that stacking of UM coverage cannot be prohibited by language of the policy when the insurance company charges separate UM premiums for each vehicle insured. The effect of the district court order is that Son is a Class 1 Insured of the corporate commercial auto policy under our UM case law, and Son is therefore entitled to stacked UM coverage for each of the seven vehicles insured by the corporation. Plaintiffs' argument that the district court order should be affirmed is also based on public policy. They argue that Plaintiffs had a reasonable expectation of stacked coverage for Son and that the policy definitions excluding Son as an insured, in effect, prohibit UM stacking, which violates the public policy of New Mexico.

{26} We begin our analysis by examining the background of our stacking jurisprudence. Again, "stacking" refers to the right of an insured to aggregate the coverage under two or more UM policies (interpolicy stacking), or under one UM policy covering more than one automobile (intrapolicy stacking), until all the damages of the insured are satisfied or until the limits of the applicable policies are exhausted. *Morro v. Farmers Ins. Group,* 106 N.M. 669, 670, 748 P.2d 512, 513 (1988); *Gamboa,* 104 N.M. at 757, 726 P.2d at 1387; *see Lopez v. Found. Reserve Ins. Co.,* 98 N.M. 166, 646 P.2d 1230 (1982) (allowing intrapolicy stacking), *modified in other respects by Montano v. Allstate Indem.*

Co., 2004–NMSC–020, ¶ 1, 135 N.M. 681, 92 P.3d 1255; *Sloan v. Dairyland Ins. Co.*, 86 N.M. 65, 519 P.2d 301 (1974) (allowing inter-policy stacking).

{27} "Policy stacking" refers to stacked UM coverage which is granted by the express terms of the policy itself. *Jaramillo*, 117 N.M. at 339 n. 1, 871 P.2d at 1345 n. 1. This is not a "policy stacking" case. "Judicial stacking" refers to stacked UM coverage which results from a rule of construction applied to the policy by the courts on grounds of public policy. *Id.* For example, in *Lopez*, the insured purchased a single policy insuring two vehicles and he paid a separate premium for UM coverage on each vehicle. 98 N.M. at 167, 646 P.2d at 1231. Since the policy did not clearly explain the effect of the multiple premiums paid under the single policy insuring the two vehicles, our Supreme Court determined that the policy was ambiguous. *Id.* at 168, 646 P.2d at 1232. Stacking was allowed on the basis of two closely related rationales: (1) because the payment of separate premiums entitled the insured to two recoveries, and (2) to fulfill the reasonable expectations of the insured. *Id.* at 170–71, 646 P.2d at 1234–35.

{28} It is now well settled in New Mexico that our Supreme Court has favored "stacked" UM coverage that is issued pursuant to NMSA 1978, § 66–5–301 (1983) (requiring every automobile liability insurance policy issued in New Mexico to provide for insurance against uninsured motorists unless such coverage is rejected by the insured).

> Our past cases have evolved a strong judicial policy, rooted in this state's uninsured motorists insurance statute (NMSA 1978, Section 66–5–301[1983] ), favoring stacking in order that a person injured by an uninsured ... motorist may receive compensation for his or her damages to the extent of the insurance purchased for his or her protection.

*Rodriguez v. Windsor Ins. Co.*, 118 N.M. 127, 127, 879 P.2d 759, 759 (1994), *modified in other respects by Montano*, 2004–NMSC–020, ¶ 1, 135 N.M. 681, 92 P.3d 1255. The public policy in support of stacking in New Mexico "has always been tied to the notion that it is unfair not to allow stacking when multiple premiums are paid or when the policy is otherwise ambiguous." *Montano*, 2004–NMSC–020, ¶ 15, 135 N.M. 681, 92 P.3d 1255 (emphasis omitted). In this way, our stacking jurisprudence effectuates the two functions enunciated in *Lopez*: to ensure that the insured gets what he or she pays for, and to fulfill the reasonable expectations of the insured. *Montano*, 2004–NMSC–020, ¶ 21, 135 N.M. 681, 92 P.3d 1255. *Montano* reiterates that "when multiple premiums are charged for UM coverage on multiple cars, even in the face of a truly unambiguous limitation-of-liability clause, stacking will be required." *Id.* ¶ 23. Therefore, stacking is not required only when the policy clearly charges only a single premium for the UM coverage *and* it also unambiguously precludes stacking. *Id.* ¶ 15. Discussing the two objectives achieved by stacking, *Montano* states:

> If the primary goal is to fulfill the reasonable expectations of the insured, then there is no need to look at anything beyond the language of the policy itself. If, on the other hand, the primary goal is to give insureds what they pay for, then we should, at the very least, be concerned with the actuarial methods used to arrive at the premium and should look behind the policy language itself.

*Id.* ¶ 23.

{29} To achieve the objective of our uninsured motorist statute, Section 66–5–301, our common law stacking jurisprudence recognizes two classes of insureds. In *Konnick*, 103 N.M. at 114–15, 703 P.2d at 891–92, the policy defined, and our Supreme Court recognized, two classes of insureds: class-one, consisting of the named insured as stated in the policy and, while residents of the same household, the spouse of that named insured and relatives of either; and class-two, consisting of any other person while occupying an insured vehicle. We note that the court-defined terms "class-one insured" and "class-two insured" do not necessarily square with the definitions for classes of insureds as articulated within insurance policies such as the one in the case at bar. Assuming that the purchaser of the policy was the same person named as the insured in the policy, our Supreme Court recognized that he could rightly

expect to be covered, no matter what his location was at the time of the accident. *Id.* at 115 & n. 2, 703 P.2d at 892 & n. 2. By further referencing the two classes of insureds defined in the policy, the purchaser could also rightly expect that his spouse and relatives, while residents of the same household, would be afforded the same protection, no matter what their location. *Id.* Accordingly, class-one insureds were recognized as having UM coverage no matter where they were or the circumstances, because coverage was not limited to a particular vehicle, and class-two insureds were afforded coverage only because they occupied a covered vehicle. *Morro,* 106 N.M. at 671, 748 P.2d at 514. This classification continues to be recognized as part of our common law stacking jurisprudence. *See Ponder v. State Farm Mut. Auto. Ins. Co.,* 2000–NMSC–033, ¶ 22, 129 N.M. 698, 12 P.3d 960; *Samora v. State Farm Mut. Auto. Ins. Co.,* 119 N.M. 467, 469, 892 P.2d 600, 602 (1995); *Jaramillo,* 117 N.M. at 339 n. 1, 871 P.2d at 1345 n. 1; *Padilla v. Dairyland Ins. Co.,* 109 N.M. 555, 557, 787 P.2d 835, 837 (1990); *Gamboa,* 104 N.M. at 758, 726 P.2d at 1388.

{30} A subcategory of class-two has also recently been recognized, giving rise to three classes of UM insureds: " '(1) the named insureds and members of a named insured's household [ (class-one insureds) ], (2) persons who are injured while occupying an insured vehicle [ (class-two insureds) ], and (3) persons who sustain consequential damages as a result of personal injuries sustained by persons who are class (1) or class (2) insureds.' " *Phoenix Indem. Ins. Co. v. Pulis,* 2000–NMSC–023, ¶ 7, 129 N.M. 395, 9 P.3d 639 (quoting Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 4.9(e), at 400 (1988)) (alteration in original). *See also Gamboa,* 104 N.M. at 760, 726 P.2d at 1390, in which our Supreme Court noted that the policy at issue expressly created these three classes of insureds.

■ {31} Whether an UM insured falls in "Class 1" or "Class 2" has important consequences.

Class I insureds may stack all uninsured motorist policies purchased by the named insured because those policies were purchased to benefit the named insured and his or her family, but Class II insureds may only recover under the policy on the car in which they rode because the purchaser only intended occupants to benefit from that particular policy.

*Ponder,* 2000–NMSC–033, ¶ 22, 129 N.M. 698, 12 P.3d 960. Our strong public policy favoring stacking applies to Class 1 insureds. *Id.* ¶ 33.

■ {32} The judgment of the district court and Plaintiffs' arguments in support of the judgment are based on the following reasoning. When the insured business was identified as a sole proprietorship and Parents were the named insureds, Parents were Class 1 insureds. Since Parents paid a separate UM premium for each vehicle, they were entitled to stack the UM coverage on all seven vehicles they insured. This fulfilled their reasonable expectation of having a recovery under each policy they paid for. Son was a Class 1 insured only because he lived with Parents, but this status also entitled Son to stacked UM coverage. When the insured business was changed from a sole proprietorship to a corporation, nothing really changed because separate UM premiums were still charged and paid for each of the vehicles in substantially the same amounts, and Parents were the stockholders of the corporation. Therefore, the reasonable expectation of Parents was that they remained Class 1 insureds and entitled to stacked UM coverage, as did Son because he lived with Parents at the time of his accident. We reject this reasoning.

■ {33} The doctrine of reasonable expectations may be invoked when the language of an insurance policy or representations of the insurance company lead an insured to reasonably expect coverage. *See, e.g., Barth v. Coleman,* 118 N.M. 1, 5, 878 P.2d 319, 323 (1994); *Martinez v. Allstate Ins. Co.,* 1997–NMCA–100, ¶ 11, 124 N.M. 36, 946 P.2d 240. The doctrine is also available where policy language is ambiguous, *see Rummel,* 1997–NMSC–041, ¶¶ 21–22, 123 N.M. 752, 945 P.2d 970, and when the "dynamics of the insurance transaction" make way for its application. *Barth,* 118 N.M. at 5, 878 P.2d at 323. For example,

in *Ponder*, the parents purchased UM coverage on eight vehicles they owned, and their daughter was a Class 1 insured entitled to stacked UM coverage because she lived with her parents. 2000–NMSC–033, ¶ 2, 129 N.M. 698, 12 P.3d 960. The daughter got married but continued living in her parents' home with her husband. When the daughter and her husband decided to move, the mother reported to the insurance agency her daughter's marriage and change of residence. She said she inquired on several occasions about the adequacy of the daughter's coverage and wanted to make sure that the daughter continued to have "full coverage." *Id.* ¶ 3 (internal quotation marks omitted). Specifically, she said that the daughter had married, she was expecting a baby, and was moving in and out of the home. The mother wanted to know whether the change in the daughter's marital status limited her coverage so that, if necessary, the mother could take the necessary steps to obtain coverage that would cover the daughter on all the vehicles. *Id.* ¶¶ 15–16. The insurance agency repeatedly assured the mother that the daughter continued to have "full coverage" and at no time did the insurance agency tell the mother that the change in the daughter's residence would affect the extent of her UM motorist coverage. *Id.* ¶¶ 3, 16. After the daughter moved out of her parents' home, she was in an accident with an uninsured driver. *Id.* ¶ 1. Considering the surrounding circumstances, the conduct of the parties, and the oral expressions of their intentions, our Supreme Court held there was an ambiguity concerning the daughter's coverage and that the mother had a reasonable expectation that the daughter had the same type and extent of coverage as when she lived with her parents. *Id.* ¶¶ 15, 29. The daughter was therefore afforded stacked UM coverage.

{34} On the other hand, judgment against an insured is appropriate as a matter of law when the insured's expectations do not extend to the facts of the case, or when the insured's expectations conflict with the clear language of the policy itself. *Samora*, 119 N.M. at 470–71, 892 P.2d at 603–04; *Martinez*, 1997–NMCA–100, ¶ 11, 124 N.M. 36, 946 P.2d 240. In this case, Plaintiffs' expectations of UM coverage for Son were not reasonable as a matter of law in light of the undisputed facts and the unambiguous language of the policy excluding Son as an insured.

{35} Parents operated their business as a sole proprietorship for several years and made a conscious decision to change the business to a corporation and thereby obtain benefits associated with being a corporation such as tax benefits and limited personal liability. Parents then expressly directed that the insurance policy be changed to reflect that the named insured be changed to the corporation they formed to own and operate the business. We will not assume that Parents did not know that changing the form in which they operated the business had insurance coverage implications. Plaintiffs presented no evidence that Parents were confused by the unambiguous terms of the UM endorsement defining who is an insured when they received the new policy from Allstate. Father's affidavit really only says that before and after the new policy for the corporation, he expected the insurance to provide Son with the coverage that was applicable to him. Parents now ask that we hold that the very change that they directed to be made is void and rewrite the policy back to state that Parents individually are the named insured, not the corporation. We hold that this is not a reasonable expectation under the circumstances.

{36} Plaintiffs' remaining arguments are premised on the assumption that because Allstate charges a separate premium for UM coverage on seven different vehicles, *someone* must be entitled to stacked UM coverage. The UM endorsement provides that only a Class 1 insured is entitled to stacked UM coverage. Moreover, the UM endorsement limits Class 1 insureds to those policies in which the named insured is designated in the Declarations as an individual. Thus, the policy, in effect, prohibits stacking when the named insured is a corporation. Therefore, when the named insured is a corporation, as in this case, *no one* has stacked coverage under the terms of the policy, even though Plaintiffs assert that *someone* should be enti-

tled to stacked coverage because separate premiums were charged. Plaintiffs accordingly contend that the definition of an insured in the UM endorsement and the prohibition against stacking are void because they result in an ambiguity and they violate our public policy. Plaintiffs therefore urge us to conclude that Parents and Son are Class 1 insureds and that Son is entitled to stacked UM coverage.

{37} Plaintiffs in effect contend that a corporate commercial auto policy must always include coverage for both a Class 1 insured and Class 2 insured when a separate UM premium is charged for each vehicle. Plaintiffs' arguments assume that the risk assumed by Allstate for insuring the business as a sole proprietorship is identical to the risk it assumed for insuring the business as a corporation. We decline to make that assumption in this case. While *Montano* recognizes that actuarial methods used to arrive at the premiums are considered to determine whether the insured gets what he pays for, we have no such evidence in this case. Moreover, the authorities which pronounce the public policy that Plaintiffs rely upon are cases in which separate UM premiums were paid by or on behalf of an individual who was insured by the policy. The insured in this case, on the other hand, is clearly and unambiguously the corporation which was named as such at the specific direction of Parents. Under the circumstances, the public policy considerations relating to UM coverage for a corporation are different.

{38} When a corporation purchases UM coverage for the vehicles it owns and operates, it is not insuring against personal injury to itself, because a corporation does not suffer personal injuries. Instead, it is purchasing UM coverage for each person who is occupying a covered automobile. Our public policy does not require each occupant of a covered vehicle, who is not a party to the contract, to expect stacked UM coverage. Nor does our public policy require stacked UM coverage to be further extended to family members who are not even occupants of a covered vehicle when they are injured. In *Benns v. Continental Casualty Co.*, 982 F.2d 461, 461 (10th Cir.1993), the driver was injured by an uninsured motorist while driving a vehicle owned by his employer. *Id.* After receiving UM payments applicable under his employer's policy, he sought UM coverage under a commercial auto policy issued to two corporations owned by his father because his personal vehicle was included in the policy along with the vehicles actually owned by the corporations. *Id.* In pertinent part, two classes of insureds defined in the policy were: "1. You[; and] 2. If you are an individual, any 'family member.'" The policy further defined "you" as the person or entity that was listed in the policy as the named insured. *Id.* at 462. The corporations were listed in the policy as the named insured; therefore the driver was neither a named insured nor a 'family member' of a named insured, and the court held he was not entitled to UM benefits under the corporate policy. *Id.* The court acknowledged New Mexico's public policy of placing an injured policy holder in the same position of recovering damages as if the tortfeasor had possessed liability insurance, but concluded that applying the policy as written did not violate our public policy because, it "granted coverage to the insured entities and over the insured vehicles in a manner that was otherwise consistent with New Mexico law and policy." *Id.* at 464. The prevailing view in the United States is that when "you" in the UM endorsement is a corporation, coverage is not extended to a "family member." *See Ins. Co. of Evanston v. Bowers*, 758 A.2d 213, ¶ 18 (Pa.Super.Ct.2000) (collecting and summarizing authorities); *see also* 24 Eric Mills Holmes, *Appleman on Insurance 2d* § 148.1[B][2] (2004) (collecting and summarizing cases where courts have refused to extend UM coverage to an individual because the named insured is a legal entity). Based on these authorities, we conclude that our public policy does not extend to Son under the circumstances of this case.

**CONCLUSION**

{39} The summary judgment entered in favor of Plaintiffs is reversed and the case is remanded with instructions to enter judgment in favor of Allstate.

{40} **IT IS SO ORDERED.**

I CONCUR: CELIA FOY CASTILLO, Judge.

CYNTHIA A. FRY, Judge (dissenting).

FRY, Judge (dissenting).

{41} I respectfully dissent. I would affirm the district court's summary judgment in favor of Plaintiffs on the ground that the definition of "insured" in the UM endorsement is ambiguous and should be construed according to the reasonable expectations of the insured.

{42} In determining whether an insurance policy provision is ambiguous, we consider whether the language "is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Rummel*, 1997–NMSC–041, ¶ 19, 123 N.M. 752, 945 P.2d 970. We engage in this analysis by asking "what understanding a reasonably intelligent, non-lawyer lay person might glean from the policy, in light of the usual meaning of the words and the circumstances leading to purchase of the policy." *Berry v. Fed. Kemper Life Assur. Co.*, 2004–NMCA–116, ¶ 61, 136 N.M. 454, 99 P.3d 1166. "Specialized knowledge of the insurance industry case law, academic treatments, and industry norms or standards should not enter into the inquiry." *Id.*

{43} Referencing *Rummel's* definition of ambiguity, I am convinced the UM endorsement is ambiguous because the structure of the endorsement's definitions is illogical, and the definitions do not explicitly address the particular matter of coverage for family members when the insured is a closely held corporation. Reading the endorsement as a whole, it is clear that Allstate tried to establish two classes of insureds by reference to whether the "named insured" is an individual or a business organization, but it failed to communicate to a reasonable hypothetical insured an intelligible distinction between the two classes.

{44} If the named insured is an individual, the endorsement plainly states in Section (B)(1)(a) that an "insured" includes "[a]ny Class 1 'insured', meaning the Named Insured and any 'family members'." Majority opinion, ¶ 16. There is nothing confusing about this definition of a Class 1 insured. The endorsement then goes on to provide in Section (B)(2)(a) that if the named insured is "[a] partnership, limited liability company, corporation or any other form of organization," then an insured includes "[a]ny Class 2 'insured', meaning the Named Insured is not an individual Named Insured." Majority opinion, ¶ 16. This language is far from clear. If the sentence had read, "any Class 2 'insured', meaning the Named Insured," it would be clear that a Class 2 insured is the business organization listed on the policy as the named insured. But the sentence does not read this way, and the purported definition of "Class 2 insured" adds language that creates confusion. The endorsement defines a Class 2 insured as "the Named Insured is not an individual Named Insured." This sentence appears to be a statement of fact rather than a definition; consequently, a reasonable insured may well surmise that a "Class 2 insured" has a separate, unstated meaning. The insured would then flip through the remaining pages of the policy, looking in vain for a definition of "Class 2 insured."

{45} The majority's approach to this difficult language is one familiar to lawyers and members of the insurance industry: it overlooks the absence of a definition for Class 2 insured and fills in the blanks by resorting to an approach that probably makes no sense to "a reasonably intelligent, non-lawyer lay person." *Berry*, 2004–NMCA–116, ¶ 61, 136 N.M. 454, 99 P.3d 1166. The majority first appropriately concludes that Son is not a Class 1 insured because the family business was a corporation. The majority then concludes that Class 2 must not include family members because only Class 1 does. This approach would be fine if the endorsement actually defined Class 2 insureds in some intelligible fashion. It is certainly possible to draft an intelligible definition, as illustrated by the definitions discussed in other cases. For example, in *Bogdahn*, 2004 OK 9, ¶ 7, 89 P.3d 1051, the policy defined "AN INSURED" as "1. You[; and] 2. If you are an individual, any 'family member.'" The term "You" refers to the named insured, and the second paragraph makes it clear that family members are included only if the named

insured is an individual. *See also Benns,* 982 F.2d at 462 (quoting the same definition as in *Bogdahn*). Here, however, the endorsement provides no definition of Class 2 at all. Instead, it provides an ambiguous statement that the majority must interpret through extensive legal analysis.

{46} Our Supreme Court has noted that "the insurer who drafts the policy must reasonably anticipate ... the effect of the language used upon an untrained mind, or ... how the language is understood by the ordinary person." *Rodriguez,* 118 N.M. at 131, 879 P.2d at 763 (internal quotation marks and citation omitted). "[T]he insurer has the responsibility of issuing an intelligible policy." *Id.* The insurer did not issue an understandable policy in this case; despite my legal training, even I could make no sense of the endorsement's definition of Class 2 insureds. And, while my legal training allows me to follow the majority's interpretive path, it is unfair to expect a lay person to be able to negotiate the necessary twists and turns.

{47} Given the ambiguity created by the endorsement's inscrutable definition of Class 2 insureds, we should give effect to the insured's reasonable expectations. *See id.* at 130, 879 P.2d at 762 ("Giving effect to the insured's reasonable expectations, in cases of policy ambiguity, is of course a well-settled approach to construing and applying language in insurance policies." (internal quotation marks and citation omitted)). In this endeavor, we consider "what the hypothetical reasonable insured would glean from the wording of the policy and the kind of insurance at issue," rather than the expectations of the specific insured who purchased the policy. *Id.* In this case, a hypothetical reasonable insured would be able to glean little from reading the UM endorsement's definition of "insured." But we must consider the kind of insurance being purchased, so we assume the existence of the same circumstances surrounding Parents' purchase of in-

surance. Thus, we assume the hypothetical insured had purchased a policy when he was a sole proprietor and understood from the intelligible language of Section (B)(1)(a) of the definition of "insured" that family members were covered. We then assume the hypothetical insured changed his form of business to a corporation. Although the record does not contain a complete copy of the policy that was in effect before the change in business form, there is no evidence suggesting that anything significant changed about the policy except the description of the form of the business on the declarations page and a minor change in the premiums charged. No one notified the insured that coverage had changed materially. Because the language of the policy did not intelligibly convey anything different, a reasonable insured could expect that UM coverage remained the same and that family members were still covered. Because Allstate failed its responsibility to communicate clearly to its insured, we should give effect to these expectations and conclude that Son is an insured under the UM endorsement.

{48} In my view, our courts should not endeavor to make sense of language that is not sensible because "by doing so we encourage the perpetuation of ... unintelligible language" in insurance policies. *Computer Corner, Inc. v. Fireman's Fund Ins. Co.,* 2002-NMCA-054, ¶ 21, 132 N.M. 264, 46 P.3d 1264. The concepts insurers seek to communicate to insureds are not beyond understandable expression. By our holdings, we should discourage insurers from using obfuscation in drafting and encourage them to communicate clearly.