**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 24, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GINA HOLUB,

    Plaintiff - Appellant,

v.

                                  No. 14-1419

CHRIS GDOWSKI; SHELLEY BECKER;
ADAMS 12 FIVE STAR SCHOOLS,

    Defendants – Appellees.
_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:13-CV-00363-RPM)**
_____

Robert M. Liechty, Cross Liechty Lane PC, Greenwood Village, Colorado, for Plaintiff-Appellant.

Gillian Dale (Thomas J. Lyons, with her on the brief), Hall & Evans, Denver, Colorado, for Defendants-Appellees.
_____

Before **TYMKOVICH**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

After Adams 12 Five Star Schools terminated Gina Holub's employment as an internal auditor for the School District, she brought this action against the School District and two of its officials, Superintendent Chris Gdowski and Chief Financial

Officer Shelley Becker. Holub raised First Amendment and state law claims, alleging the defendants terminated her employment in retaliation for her attempts to uncover and report fraudulent budgeting practices. The district court granted summary judgment for the defendants on all of Holub's claims.

In this appeal, Holub argues the district court erred in concluding that when she discussed her concerns with two School District board members, she spoke as an employee rather than a citizen and thus her speech was not protected by the First Amendment. Citing *Lane v. Franks*, 134 S. Ct. 2369 (2014), Holub contends she spoke as a citizen because her speech was not ordinarily within the scope of her job responsibilities. But we conclude that because Holub's responsibilities as an internal auditor for the District included discovering and reporting accounting and budgeting issues, her comments to the Board members concerning her budget findings were made pursuant to her official duties and were not protected. We also affirm the district court's grant of summary judgment on Holub's state law claims. As the district court found, the record contains no controverted material facts to support Holub's claim that her termination resulted from an ongoing effort to conceal her budget findings.

**BACKGROUND**

Gina Holub began employment as an internal auditor for the School District in 2007. She reported to the Chief Financial Officer and her responsibilities included evaluating the District's internal accounting and operating controls, reviewing

2

financial information, and reporting any irregularities. Her contract specified she could be terminated for cause.

In late 2011 the District hired a new CFO, Shelley Becker, who implemented measures to increase the accuracy of the District's budget. At Becker's request, District employee Tracey Cantrell analyzed the District's salary expenses. Cantrell determined the salary budget included $12 million more in funding than required to pay the number of full-time District employees (FTEs). Cantrell reported her findings to Becker and when Becker failed to address the issue, Cantrell brought her findings to Holub's attention.

Holub agreed with Cantrell's conclusion, except Holub identified $17 million rather than $12 million in unsupported salary expenses. Holub believed her findings were significant because they impacted the Board's requirement that the District's budget include a 10% reserve. While the budget appeared to satisfy this requirement, if the salary budget included $17 million more than necessary to pay salary expenses, the District had greater budget reserves than appeared in the budget. According to Holub, the District's concealment of this excess reserve hindered interest groups, such as the teachers' union, from advocating for increased salaries, benefits, or classroom spending. Holub conveyed her findings to District superintendent Chris Gdowski, who advised her to speak to her supervisor, Becker, about her concerns.

About the same time that Holub raised her budget concerns, she expressed to Gdowski that she felt she should not be reporting to the CFO because it created a conflict of interest. Gdowski asked Holub to research whom she should be reporting

3

to and get back to him. Holub's research indicated that as an internal auditor, she should report to senior management, which included Becker, and to the Board. After reporting this information to Gdowski, Holub remained under Becker's supervision.

District employees held four separate meetings in July 2012 and August 2012 to discuss Holub's concerns. Becker, supported by other staff members, explained to Holub that she had erred in her analysis by incorrectly assuming the salary budget included only base salaries, or FTEs. Becker explained that Holub had not considered many other salary budget items, including overtime pay and coaching stipends, which accounted for the greater budgeted amount. This information satisfied Gdowski that Holub's concerns were unfounded.

But Holub was not satisfied. A few days after the final meeting, Holub approached the Board's president, Mark Clark, and advised him of her views regarding the inflated salary budget. She told Clark she was worried she would be retaliated against for reporting to him, but Clark responded that she was doing the job she was hired to do.

Two days later, Gdowski introduced Holub to the Board and indicated that as an internal auditor, Holub could be a resource for the Board. About a week later, Holub again emailed Gdowski, reiterating her view that the District's salary budget had been inflated and asking to present her findings to the full Board. Gdowski responded that based on the information Holub had presented, he believed Holub's concerns were unfounded and he would not recommend that the Board hear her

4

concerns in a public meeting. But Gdowski did agree to ask Clark if he would meet with Holub and, if so, whether other Board members would be present.

Before any meeting had been arranged, Holub prepared and delivered a memorandum to Gdowski in which she cited accounting standards and state law and asserted the District had acted illegally and unethically in concealing excess budget reserves. Because Holub alleged state law violations, the District hired independent expert Vody Herrmann, a former Assistant for Public School Finance with the Colorado Department of Education, to review the budget. The District gave Holub access to Herrmann and permitted Holub to provide documents for Herrmann to review.

But even before Herrmann completed her review, Holub insisted in an email to Gdowski that if Herrmann disagreed with her conclusions, Holub had a responsibility to present her concerns to the Board. The District's general counsel responded, advising Holub that the Board was aware of her concerns, that her responsibility was to raise concerns to management, and that after receiving the independent review, the Board would determine whether any further action was necessary.

About three weeks later, Herrmann presented her findings to Holub, Gdowski, and Becker. Although Herrmann reported that some District budgeting practices could be improved, she explicitly concluded that Holub's concerns regarding an inflated salary budget were unfounded.

Shortly after that meeting, Holub met with two Board members, Fred Schaefer and Max Wilsey, at Schaefer's home office. She explained to them her concerns that

5

the salary budget had been inflated and said that she'd approached them, in spite of potential retaliation, because she believed she had a duty to report inappropriate management actions to the Board. Schaefer agreed she was fulfilling her duties to the District. Following this meeting with Holub, Schaefer and Wilsey met with Gdowski to discuss Holub's concerns. Both Board members left that meeting satisfied that Holub's concerns were unfounded.

In early October 2012, Gdowski, Becker, and the District's Chief Human Resource Officer, Mark Hinson, met to discuss Holub's unwillingness and apparent inability to move past her budget concerns. After the three decided to terminate Holub's employment, Becker and Hinson met with Holub on October 19, 2012, to inform her of their decision. Becker and Hinson told Holub her inability to move past her discredited budget concerns meant that she could no longer be an unbiased and productive employee.

Following her termination, Holub sought unemployment benefits. In doing so, she provided two statements indicating she'd been terminated for performing her job functions. She stated that as an internal auditor her job responsibilities included reviewing District finances and bringing potential fiscal issues to the attention of management and the Board. She also maintained that she discovered that the District's budget was artificially inflated and that the District terminated her employment in retaliation for reporting those findings.

In February 2013, a local news station aired a report about the School District's budgeting practices and included an interview with Holub in which she

6

accused the District of inflating its salary budget. Aware that the report would air, Gdowski attempted to preempt any public concern by posting a statement on the District's website. In the statement Gdowski informed the District's staff, parents, and the community that the District had investigated Holub's accusations of unlawful budgeting practices and found them false. He also questioned Holub's credibility, suggesting she had abandoned her fiduciary responsibilities to the District by providing information to the teachers' union while she was still employed by the District and while the union and District were engaged in salary negotiations.

Holub eventually brought this action against the School District, Gdowski, and Becker alleging (1) a 42 U.S.C. § 1983 claim against all defendants for terminating her employment in retaliation for protected First Amendment speech; (2) a breach of contract claim against the District; (3) an intentional interference with contract and wrongful discharge claim against Gdowski and Becker; and (4) a defamation claim against Gdowski.

The district court granted the defendants' motion for summary judgment on all of Holub's claims and Holub appeals.

## DISCUSSION

We review a district court decision granting summary judgment de novo. *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts and evidence submitted by the parties in the light

7

most favorable to the non-moving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

**I.     The district court correctly granted summary judgment on Holub's First Amendment claim.**

Holub contends the district court erred in characterizing her speech to Board members Schaefer and Wilsey as employee speech rather than citizen speech and in granting summary judgment in favor of the Board on her First Amendment claim.[1] She contends that because she did not make her comments to the two Board members pursuant to her ordinary duties as the District's internal auditor, the comments were protected as citizen speech by the First Amendment. The District contends Holub's comments were clearly made pursuant to her official duties and the district court did not err in so finding.

While a citizen entering public service necessarily "must accept certain limitations on his or her freedom," the First Amendment doesn't permit a public employer to restrict "the liberties employees enjoy in their capacities as private citizens." *Garcetti v. Ceballos*, 547 U.S. 410, 418-19 (2006); *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968). We apply the five-step *Garcetti/Pickering* test to determine whether a public employer violated

---

[1] In the district court, Holub also alleged the School District terminated her employment in retaliation for statements she made to teachers' union representatives while she was still employed with the District. The district court granted summary judgment on Holub's First Amendment claim regarding that speech, finding no evidence that the District knew of Holub's speech until after it decided to terminate her employment. On appeal, Holub has abandoned this aspect of her First Amendment claim.

the First Amendment by sanctioning an employee's speech. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (discussing five-part analysis, which asks (1) whether the employee spoke pursuant to his or her official duties; if not, (2) whether the employee's citizen speech is a matter of public concern; if so, (3) whether the employee's interest in commenting on the issue outweighs the interest of the state as employer; if so, (4) whether the employee has demonstrated that his or her speech was a substantial or motivating factor in a detrimental employment decision; and, if so, (5) whether the employer has demonstrated that it would have taken the same action against the employee even in the absence of the protected speech).[2]

Here the district court based its holding on the first step in that analysis, concluding Holub made her comments to Board members pursuant to her official duties. Therefore, the court held Holub's speech was not protected under the First Amendment. *See id.*

But Holub argues the district court failed to correctly apply the Supreme Court's recent decision in *Lane v. Franks*, 134 S. Ct. 2369 (2014). She contends *Lane*

---

[2] Notably, the district court—as opposed to the trier of fact—resolves the first three *Garcetti/Pickering* inquiries. And if in answering any of these three inquiries the district court concludes the speech is not protected, the analysis ends. For example, if the court determines at the first step that the employee spoke pursuant to his or her official duties, the speech is not protected and the analysis ends. If the court determines, based on its answers to the first three inquiries, that the speech is protected, the last two inquiries are ordinarily resolved by the trier of fact. *Brammer-Hoelter*, 492 F.3d at 1202-03.

effectively narrowed the meaning of "official duties" and thus broadened the First Amendment's protection of public employees' speech.

The plaintiff there, Edward Lane, was employed as a program director by a community college. Lane terminated an employee after discovering that she was not reporting to work. Lane then testified against the former employee—who also served in the state's legislature—at her criminal trial after she was indicted for fraudulently receiving federal funds. The college later terminated Lane's employment, ostensibly for budget reasons, and Lane sued, alleging the college fired him in retaliation for testifying against his employee. Applying *Garcetti*, the district court and the Eleventh Circuit both rejected Lane's argument that he spoke as a private citizen, rather than as a public employee, because Lane's testimony concerned information he learned through his public employment. *Id.* at 2375-77.

On review, the Supreme Court in *Lane* framed the issue as, "[W]hether the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities." *Id.* at 2378. The Court concluded the Eleventh Circuit interpreted *Garcetti* too broadly, noting that *Garcetti* "said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment." *Id.* at 2379. The Court held "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* The Court reasoned that although Lane's testimony "concerned" information he learned through his duties as a program

10

director, providing such sworn testimony was "outside the scope of his ordinary job duties." *Id.* at 2378. Thus, the Court held Lane testified as a private citizen and the First Amendment protected his speech. *Id.* at 2380.

In arguing that *Lane* altered the focus of *Garcetti*/*Pickering*'s first step, Holub zeroes in on *Lane*'s use of the term "ordinary"—a term *Garcetti* didn't use. Holub interprets ordinary as "customary [or] usual," and contends that because she had never previously complained to the Board, her comments to two Board members regarding her budget concerns could not have been made pursuant to her ordinary duties. Aplt. Br. 38, n.20. Thus, she reasons, the defendants violated the First Amendment by sanctioning her speech.

But *Lane*'s use of the term "ordinary" didn't narrow *Garcetti*'s focus to the frequency of the speech at issue. Rather, *Lane*'s consideration of whether speech is employee speech or private citizen speech focused on the job duty giving rise to the speech. Our own decisions interpreting *Garcetti*'s first step are consistent with this focus. *See Brammer-Hoelter*, 492 F.3d at 1203 (explaining that whether speech is made pursuant to an official duty depends, in part, on whether it is "consistent with 'the type of activities'" for which the employee was paid (quoting *Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007))); *see also Lane*, 134 S. Ct. at 2383 (Thomas, J., concurring) (noting *Lane* required nothing more than a "straightforward" application of *Garcetti* because Lane's job duties didn't include testifying in court).

11

In *Lane*, the Court contrasted the employee's testimony at issue in that case with the speech at issue in *Garcetti*—a prosecutor's memorandum recommending dismissal of a criminal case based on search warrant inaccuracies. The *Lane* Court pointed out that even though the prosecutor's speech was not usual or customary, it was "ordinarily within the scope" of his duties and clearly arose from the prosecutor's central job functions. *Id.*; *Garcetti*, 547 U.S. at 414-15. In contrast, Lane's customary job duties did not include testifying in court. 134 S. Ct at 2378-80. In short, both *Lane* and *Garcetti* direct us to focus on whether the employee's speech was within the scope of the employee's usual duties, not whether the speech itself was frequent, usual, or customary.

Here, Holub's report to Wilsey and Schaefer fell squarely within the scope of Holub's ordinary and usual responsibilities. As the District's internal auditor, Holub's responsibilities included uncovering and reporting any potentially unlawful budgeting practices. And Holub repeatedly recognized this responsibility, demanding on several occasions to report her budgetary concerns to the Board and later, in her unemployment proceedings, affirming that her job duties required her to report budget concerns to the Board. Moreover, Gdowski and several Board members, including Clark and Schaefer, shared Holub's understanding that her position obligated her to report concerns to the Board, not just management.

Because Holub's comments to Schaefer and Wilsey, while not customary, were made pursuant to her ordinary duties, the First Amendment did not protect her

12

speech. Accordingly, the district court did not err in granting summary judgment to the School District on Holub's First Amendment claim.

## II. The district court properly granted summary judgment on Holub's state law claims.

Holub's complaint also alleged breach of contract against the District; intentional interference with contract and wrongful discharge in violation of public policy against Gdowski and Becker; and defamation against Gdowski. Holub predicated each claim on her general theory that the District's stated reason for terminating her employment—that her inability to move beyond her budget complaints rendered her unable to effectively carry out her duties—was nothing more than a ruse orchestrated by Gdowski and Becker to silence Holub's complaints about the budget. Although we conclude, as did the district court, that Holub's failure to assert genuine issues of material fact to support this argument ultimately directs summary judgment on all of her state law claims, we address those claims separately below.

### A. Breach of contract

Holub's employment contract provided she could be "terminated for cause" but did not define the term "cause." Holub contends the District breached the contract because it lacked cause to terminate her employment. The District contends its reasons for terminating Holub's employment were uncontroverted and provided more than sufficient cause for her termination.

The District summarized those reasons verbally for Holub at the October 19, 2012, meeting and in a follow-up letter to Holub dated October 26, 2012. In that letter, the District indicated it terminated Holub because her "personalization of budget-related work for the past four months" had dramatically impacted her ability to remain unbiased, support Board decisions, and be an effective member of the District's financial services department. The letter noted that Holub's poor working relationship with her supervisor, Becker, resulted from Holub's personal attacks on Becker's competency and ethics. The letter suggested that although the District had attempted to constructively address Holub's concerns, her "tone, tenor and negative approach remained virtually the same." Finally, the letter identified the reasons for Holub's termination as her unwillingness to accept the independent auditor's conclusions and her inability to "move forward and work in a collaborative manner." Defendants' Mot. Summary Judgment, Doc. 55, Ex. N.

In opposing the District's summary judgment motion, Holub argued that a factual dispute remained as to whether Gdowski and Becker "knew exactly what was going on" and manufactured cause to terminate Holub's employment in order to conceal their true reason for her termination—to retaliate against her for exposing the District's deceptive, and possibly illegal, budget practices.

Notably, as the district court pointed out, Holub's assertion of a "factual issue" did not focus on whether the District had cause to terminate her. Instead, she suggested that a material issue of fact remained as to whose budget calculations were correct—hers or the District's.

14

But this argument, which Holub reiterates on appeal, fails to consider an important assumption by the district court: "*Even assuming Holub's budget analysis was correct*," the facts contain "no indication" the District "feign[ed] engagement in a debate with Holub just so it could ultimately fabricate a reason to fire her."[3] Mem. Op. & Order, Doc. 86, at 18 (emphasis added). Moreover, Holub recognizes that "she created friction with the CFO" by accusing Becker of misrepresentation,[4] but she maintains that "a jury would have found this friction justified if it found that [Gdowski and Becker] intentionally padded the salaries to keep the reserves at 10%." Aplt Br. 47.

But as the district court recognized, the issue here isn't whether Holub has demonstrated material issues of fact as to whether she correctly identified budget concerns, thus permitting a jury to have "found this friction justified." Instead, even assuming the record demonstrates a genuine issue of fact as to whether Holub or the

---

[3] Holub characterizes the district court's conclusion as a "*non sequitur* [that] has nothing to do with proof of a cover-up." Aplt. Br. 46, n.25. She suggests that she does not contend the District engaged in debate with her in order to fabricate a reason to terminate her. Instead, she contends, the District engaged in a debate with her to "try to appease her and to keep her from pursuing her concern that there was fraud in the budget." *Id.* She concludes that "[w]hen [the District] discovered that Ms. Holub would not be appeased . . . the district fired her." *Id.* But this appears to be a distinction without a difference for purposes of the issue at hand, since ultimately both the district court's and Holub's characterization of her argument assume that she contends the District "engaged in a debate with plaintiff" as part of some larger conspiracy to discredit her rather than in a sincere effort to address her concerns.

[4] Holub's admission of ongoing conflict with her supervisor and her inability to move forward arguably supports the District's position that it terminated her employment for "cause," and entitles the District to summary judgment on her breach of contract claims. Nevertheless, we will consider her suggestion that despite her admitted and ongoing conflict with her supervisor, the District lacked "cause" to terminate her because the conflict was not of her own doing.

15

District more accurately assessed the budget, the issue here is whether there are material, controverted questions of fact as to whether the District terminated her employment, not for cause, but as part of some ongoing effort to cover up the facts she'd exposed.

As the district court found, there are simply no disputed material facts to support Holub's conspiracy theory. Instead, the facts show the opposite. District employees met with Holub on four separate occasions over a four-week period to review and discuss her concerns and to explain to her the District's methodology of budgeting salary expenses. And when Holub refused to accept the District's explanations, the District didn't shut her down. Instead, it retained a well-known and well-respected expert in school budget and finance, Vody Herrmann, to conduct an independent review and provide an opinion regarding Holub's allegations. Herrmann, a former Assistant of Public School Finance for Colorado's Department of Education, did exactly that.

The record demonstrates that Herrmann devoted approximately 70 hours to reviewing materials before providing her opinion. In doing so, she (1) met individually with Holub and reviewed documentation Holub provided; (2) met with Becker and District Budget Manager, Vickie Lisco, and reviewed the supportive documentation used in preparing the District's budget; and (3) reviewed the District's prior years' financial information to identify any ongoing budgetary issues from prior administrations.

Moreover, after Herrmann's expert and extensive review, she found Holub's complaint wholly unjustified. And Herrmann not only explained her findings to Gdowski and Becker, she explained them to Holub. In doing so, Herrmann expressly advised Holub that the District's budgeted salary figures included both FTEs and other salary expenses.

Unable to controvert Herrmann's qualifications, the nature of her independent review, or her conclusions, Holub now broadly suggests that the record contains some "indirect evidence of a coverup" that would permit a jury to infer that the District intentionally compromised Herrmann's findings. Aplt. Br. At 51. Holub then generally contends the District "knew that there were a variety of other issues regarding the budget, many of which were historical problems." Holub then inexplicably concludes, "Thus, . . . it was relatively easy [for the District] to obfuscate matters for [Herrmann], thereby taking the focus away from the principal issue." Id. at 50.

Although Holub's allegations are less than clear, she appears to suggest that the District intentionally failed to provide Herrmann with information she needed to fully understand Holub's allegations and somehow steered Herrmann toward "ancillary issues." Aplt. Br. 50. But we find no support in the record for these allegations.[5]

---

[5] Ironically, the only portion of the record Holub quotes to support her suggestion that the District somehow withheld materials from Herrmann is the email Holub sent to Gdowski before Herrmann had even begun her review, in which Holub expressed concern that Herrmann might not be provided necessary information or

Our review of the record convinces us the district court did not err in concluding that no genuine issues of material fact remained as to whether the District terminated Holub's employment for cause and in granting summary judgment to the District on Holub's breach of contract claim.

## B. Intentional interference with contract/wrongful discharge/defamation

Holub also challenges the district court's decision to grant summary judgment to Gdowski and Becker on her claims of intentional interference with contract and wrongful discharge in violation of public policy and to Gdowski on her defamation claim. The court based this decision on its conclusion that there was no evidence that either Gdowski or Becker acted willfully and wantonly in terminating Holub and thus both individual defendants were immune from liability under the Colorado Governmental Immunity Act, C.R.S. § 24-10-101. *See* C.R.S. § 24-10-118(2)(a) (providing immunity for any "public employee" for actions arising out of state employment unless the act was "willful and wanton"). Holub asserts the district court erred because she presented evidence of Gdowski's and Becker's efforts to cover up her budget findings. According to Holub, this evidence was sufficient to establish they acted willfully and wantonly in discharging her for revealing that cover-up.

But these claims also rely on Holub's assertion that the proffered evidence demonstrated the District feigned engagement in a debate with Holub in order to

might not understand the information she received. Therefore, Holub wanted to present her own findings to the Board regardless of Herrmann's findings. But Holub's anticipation that information might be withheld adds nothing to her groundless suggestion that the District intentionally "obfuscate[d] matters" for Herrmann. Aplt. Br. 50.

18

smother her allegations of a cover-up and eventually to terminate her employment. For the reasons discussed above, the evidence does not support that assertion.

We have reviewed the extensive evidence cited by the parties and conclude that, even taken in the light most favorable to Holub, it does not create a factual dispute defeating summary judgment on Holub's state law tort claims. Holub's speculation and unsupported inferences regarding an extensive cover-up to hide excess reserves are contradicted by Gdowski's and Becker's extensive efforts to address Holub's concerns, including multiple meetings with Holub to review and discuss her concerns, and the District's hiring of an external auditor to conduct an independent review of her allegations.[6] *See McDonald v. Wise*, 769 F.3d 1202, 1218 (10th Cir. 2014) (interpreting the CGIA as requiring that a plaintiff demonstrate that the defendant's actions were calculated to cause harm); *Moody v. Ungerer*, 885 P.2d 200, 204 (Colo. 1994) (discussing willful and wanton in the context of the CGIA and holding that under Colorado law, conduct is not willful and wanton unless it is done in conscious or reckless disregard of the rights of others). In sum, the undisputed facts demonstrate that Gdowski's and Becker's actions were not unreasonable, much less purposely reckless.

---

[6] Holub premises her defamation claim on Gdowski's posting of a statement on the District's website to District staff, parents, and community members, in which he advised that Holub's comments in an interview with a local television station were false. Although Gdowski took this action after Holub's employment had been terminated, Holub relies on essentially the same evidence of alleged willful misconduct to support this claim and it fails for the same reasons we've discussed above.

19

The district court did not err in finding both Gdowski and Becker immune from liability under C.R.S. § 24-10-101 and in granting summary judgment on Holub's state law tort claims.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of the defendants.