**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 20, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

COREY CHRISTY,

     Plaintiff - Appellant,

v.                                No. 14-2168

TRAVELERS INDEMNITY COMPANY
OF AMERICA,

     Defendant - Appellee.
_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:13-CV-00281-WJ-CG)**
_____

Clayton E. Crowley, Crowley & Gribble, P.C., Albuquerque, New Mexico, for Plaintiff-Appellant.

Jennifer A. Noya (Tiffany Roach Martin, with her on the brief), Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico, for Defendant-Appellee.
_____

Before **BRISCOE**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

     Plaintiff-Appellant Corey Christy purchased a commercial general-liability insurance policy (the CGL Policy) from Travelers in the name of his sole proprietorship, K&D Oilfield Supply (K&D). Subsequently, Mr. Christy registered

his business as a corporation under the name K&D Oilfield Supply, Inc. (K&D, Inc.). Mr. Christy renewed his CGL Policy annually, but did not notify Travelers that he had incorporated his business. After Mr. Christy formed K&D, Inc., he was in an accident and made a claim under the CGL Policy. Travelers denied coverage based on Mr. Christy's failure to inform it of the change in business form, and Mr. Christy brought suit. On cross motions for summary judgment, the district court found in favor of Travelers. We affirm in part, reverse in part, and remand for further proceedings.

## I.   BACKGROUND

Mr. Christy purchased the CGL Policy from Travelers in 2007. The Policy designated K&D as the named insured and listed the "Form of Business" as "Individual," indicating K&D was a sole proprietorship. The CGL Policy insured a truck used for K&D's business as a "covered auto" and included uninsured motorist (UM) coverage in the amount of $1,000,000. In addition to the CGL Policy, the Christys also purchased an auto insurance policy through Travelers on their personal vehicle (the Personal Policy).

Subsequently, an attorney advised Ms. Christy that K&D should be incorporated to protect the family's assets from liability incurred by the business. The Christys incorporated K&D, Inc. in April 2008, but did not notify Travelers of the change.

Each year at the renewal of the CGL Policy, the Christys' insurance agent sent a cover letter stating, "Please review your policy for accuracy and advise me if any

2

changes or additional coverage are needed." Additionally, the Christys' insurance agent met with them annually to advise them about their coverage. The Christys did not inform Travelers of the formation of K&D, Inc. during any of these annual meetings.

On July 28, 2010, Mr. Christy was seriously injured when a vehicle operated by an underinsured motorist struck him while he was riding his bicycle. Mr. Christy recovered the underinsured motorist's policy limits of $25,000. He received an additional $100,000 from the UM coverage on the Personal Policy with Travelers. Relevant to this appeal, Mr. Christy also sought to recover under the UM provision of the CGL Policy,[1] but Travelers denied the claim.

Mr. Christy brought suit, arguing he was entitled to UM benefits under the CGL Policy. Specifically, he pointed to the CGL Policy's identification of K&D as the "Named Insured" and the "Form of Business" as "Individual."[2] He also relied on the CGL Policy's definition of an "Insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." That provision of the CGL Policy states:

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":
   a. The Named Insured and any "family members".

---

[1] The CGL Policy, and in particular the UM Endorsement, includes both uninsured and underinsured motor vehicles within the definition of "uninsured motor vehicle."

[2] All references to the terms of the Policy reflect the version of the Policy in effect at the time of Mr. Christy's accident.

3

b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation, or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

c. The Named Insured for "property damage" only.

The UM endorsement further provides that Travelers will pay "all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle' because of . . . '[b]odily injury' sustained by an 'insured' and caused by an 'accident.'" The CGL Policy broadly defines "Accident" to include "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'"

Based on this language, Mr. Christy claimed he was entitled to recover UM benefits as an "insured" under the CGL Policy. Specifically, Mr. Christy argued that although K&D was designated as the named insured on the CGL Policy, Mr. Christy was the true named insured as the sole proprietor of K&D, which was simply a name under which Mr. Christy did business. According to Mr. Christy's reading of the CGL Policy, the named insured was an individual—Mr. Christy—and therefore UM coverage was available for any accident, not only accidents occurring while the

4

insured was occupying a covered auto. As such, Mr. Christy argued the CGL Policy provides coverage for the accident that occurred while he was riding his bicycle.

Travelers contended the incorporation of K&D effectively changed the named insured to K&D, Inc. And, according to Travelers, where the named insured is a corporation, the CGL Policy covers only persons occupying an insured vehicle at the time of the accident. Thus, Travelers asserts Mr. Christy's bicycle accident is not covered by the CGL Policy.

Following discovery, the parties filed cross-motions for summary judgment, advancing their competing positions on whether Mr. Christy was entitled to UM coverage under the CGL Policy. The district court granted summary judgment in favor of Travelers. The district court found, first, that Mr. Christy had a duty to notify Travelers he had changed the form of his business from a sole proprietorship to a corporation. Second, the district court found that Mr. Christy's failure to update Travelers about the change in his business structure constituted a material misrepresentation that had induced Travelers to renew the CGL Policy in 2008, 2009, and 2010. The district court therefore reformed the CGL Policy to reflect K&D, Inc. as the named insured from 2008 through 2010 and held that, as reformed, the CGL Policy did not cover Mr. Christy's bicycle accident.

Mr. Christy appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse in part, affirm in part, and remand for additional proceedings.

## II.    DISCUSSION

Because this case comes before the panel from a grant of summary judgment, we review the district court's ruling de novo, applying the same legal standard as the district court. *Holub v. Gdowski*, 802 F.3d 1149, 1154 (10th Cir. 2015), *petition for cert. filed*, -- U.S.L.W. --- (U.S. Dec. 30, 2015) (No. 15-839). "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' We view the facts and evidence submitted by the parties in the light most favorable to the non-moving party." *Id.* (citation omitted) (quoting Fed. R. Civ. P. 56(a)).[3] A factual dispute is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On appeal, Mr. Christy argues the district court erred when it determined he had an affirmative duty to notify Travelers of the formation of K&D, Inc. He also alleges his failure to inform Travelers about the incorporation did not constitute a material misrepresentation and, therefore, reformation was inappropriate. Finally, Mr. Christy contends the district court erred in granting summary judgment on his claim for breach of the implied covenant of good faith and fair dealing.

---

[3] Both parties filed motions for summary judgment before the district court. In such cases, "[c]ross-motions for summary judgment are to be treated separately." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). Because Mr. Christy appeals the district court's grant of summary judgment in Travelers' favor, we treat Travelers' motion independently and consider Mr. Christy the non-moving party for purposes of this appeal.

Because we cannot determine as a matter of law that Mr. Christy had an affirmative duty to inform Travelers of the formation of K&D, Inc., summary judgment was inappropriate on this issue. In addition, Mr. Christy raised genuine issues of fact that preclude a determination at this stage of the proceedings of whether the failure to inform Travelers was a material misrepresentation. As such, the district court erred in reforming the policy on that ground.[4] We therefore reverse

[4] Before the district court, Travelers also asserted theories of mutual and unilateral mistake and breach of contract. Because the district court found Mr. Christy made a material misrepresentation by not informing Travelers of the incorporation of K&D, Inc., it did not address Travelers' additional arguments. On appeal, Travelers has not renewed its breach of contract argument as an alternate ground to affirm the district court's grant of summary judgment. And Travelers addresses its theories of unilateral and mutual mistake only in passing in two footnotes in its brief. As such, they are not properly presented to this court as alternate grounds to affirm the grant of summary judgment.

But even if Travelers had properly presented these arguments as alternate grounds to affirm, we would nevertheless be precluded from doing so because either theory requires factual determinations better made by the district court in the first instance. For unilateral mistake, reformation is appropriate under New Mexico law only if the mistake is accompanied by fraud or other inequitable conduct on the part of the nonmistaken party. *See Chromo Mountain Ranch P'ship v. Gonzales*, 681 P.2d 724, 725 (N.M. 1984). The district court has not made a finding that Mr. Christy acted fraudulently by not updating Travelers about the incorporation of his business. *See Prudential Ins. Co. of Am. v. Anaya*, 428 P.2d 640, 643 (N.M. 1967) (holding a finding of fraud is not required when determining whether a party engaged in a material misrepresentation). We therefore leave the consideration of this issue for remand.

As to mutual mistake, New Mexico law allows for reformation of a contract "where there has been a meeting of the minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto." *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 245 (N.M. 1991) (internal quotation marks omitted). Before the court can reform a writing, the party seeking reformation must show "clearly and beyond doubt that there has been a mistake . . . [and must] also be able to show with equal clearness and certainty the *exact* and *precise* form and import that the instrument ought to be made to assume, in order that it may express and

the grant of summary judgment in favor of Travelers and remand for further proceedings. But we affirm the grant of summary judgment as to Mr. Christy's claim for breach of the implied covenant of good faith and fair dealing.

### *A. Duty to Inform*

We begin our analysis with the question of whether—based on the undisputed facts—Mr. Christy had an affirmative obligation to inform Travelers that he had incorporated K&D, Inc. The district court found Mr. Christy was obligated to inform Travelers of the change in the form of his business for two reasons: (1) the provisions of the CGL Policy created a contractual duty to inform and (2) public policy supports imposition of such a duty. We disagree.

**1. CGL Policy Provisions**

Under New Mexico law, parties are free to structure their contractual obligations as they wish, so long as they do not clearly contravene public policy. *See First Baptist Church of Roswell v. Yates Petroleum Corp.*, 345 P.3d 310, 313–14 (N.M. 2015); *Nearburg v. Yates Petroleum Corp.*, 943 P.2d 560, 571 (N.M. Ct. App. 1997) ("Parties to a contract agree to be bound by its provisions and must accept the burdens of the contract along with the benefits."). Recognizing this general principle, New Mexico courts interpret contractual provisions to effectuate the intent of the parties. *See WXI/Z Sw. Malls v. Mueller*, 110 P.3d 1080, 1083 (N.M. Ct. App. 2005).

---

effectuate what was really intended by the parties." *Twin Forks Ranch, Inc. v. Brooks*, 964 P.2d 838, 841 (N.M. Ct. App. 1998) (internal quotation marks omitted). But the question of the parties' true intent is a factual matter, best decided by the district court after a full evidentiary hearing. *C.R. Anthony*, 817 P.2d at 246. Again, the district court should consider this question in the first instance on remand.

"[A]nd absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *Id.* (internal quotation marks omitted).

Travelers argues the express language of the Policy imposed an obligation on Mr. Christy to inform Travelers he had incorporated his business. To begin, Travelers relies on a provision in the Policy that reads: "This policy contains all the agreements between you and us concerning the insurance afforded." According to Travelers, this language created an affirmative obligation requiring Mr. Christy to notify Travelers of any changes to his business structure. The district court agreed with Travelers, characterizing this language as a "catch-all" provision that required Mr. Christy to inform Travelers of any changed circumstances.

We do not agree with this reading. Nothing in the express language of the provision imposes any obligation on either Mr. Christy or Travelers. Rather, the provision is a standard integration clause, which merges any prior or contemporaneous agreements into the final written contract. *See Nakashima v. State Farm Mut. Auto. Ins. Co.*, 153 P.3d 664, 668 (N.M. Ct. App. 2007); *see also* 2 David Frisch, Lawrence's Anderson on the Uniform Commercial Code § 2-202:48 (3d ed.) ("An integration clause is indicative that the parties intended the writing to be the exclusive statement of the parties' agreement, and will usually be given that effect."). The sole and unambiguous effect of this provision is to limit the parties' agreement to the final written contract. There is no obligation-creating language in the clause, and

9

we will not read into the CGL Policy duties not clearly contemplated by the parties.[5]

*See Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 80 (N.M. 1993)

("Thus, implied covenants are not favored in law, especially when a written

agreement between the parties is apparently complete."). To the extent the integration

clause is relevant to the issue of Mr. Christy's duty, it dictates that any obligation to

notify Travelers about the formation of K&D, Inc. must be expressly stated in the

Policy.

Travelers argues that such an obligation can be found in the provision stating

that the Policy is void if an insured commits fraud or "intentionally conceal[s] or

misrepresent[s] a material fact." Travelers argues this language created an affirmative

duty for Mr. Christy to inform Travelers of the change in business form. Again, we

disagree. This provision states that the CGL Policy is void in the event of fraud or if

an insured "intentionally conceal[s] or misrepresent[s] a material fact." By its plain

language, it does not impose a duty requiring Mr. Christy to inform Travelers of

changes to his business. It does not expressly impose affirmative obligations on

either party. Under this provision, the CGL Policy could be rendered void if Mr.

Christy made a material misrepresentation to Travelers. But, as explained below, we

_____

[5] In fact, had Mr. Christy wanted to change the Policy to reflect K&D, Inc. as the named insured, this provision would have required him to do so in writing through a suitable endorsement. *See Koehlke v. City Street Inn, Inc.*, No. 2002-A-0108, 2003 WL 22290888, at *2–3 (Ohio Ct. App. Sept. 30, 2003) (interpreting identical language to require insured to notify insurer in writing of change from sole proprietorship to corporation if she wished to bring a claim under a theory of liability only available to her if policy was issued to a corporation). That is, the integration clause would have precluded Mr. Christy from unilaterally altering the terms of the Policy simply by forming K&D, Inc.

cannot determine at this stage of the proceedings whether Mr. Christy made such a material misrepresentation. As a result, it is uncertain whether this provision of the CGL Policy is implicated. *See* discussion *infra*.

The district court therefore erred in concluding the language of the CGL Policy imposed an ongoing obligation on Mr. Christy to update Travelers about any changed circumstances related to his business.

**2. Public Policy**

Alternatively, the district court concluded Mr. Christy's duty to inform Travelers of the incorporation of K&D, Inc. arose as a matter of public policy. According to the district court, such an obligation should be imposed as a matter of public policy even in the absence of an express provision in the CGL Policy requiring Mr. Christy to keep Travelers informed of any changes in K&D's business structure.

We depart from the district court's analysis on this issue for two reasons. First, the district court reached the conclusion that it was required to consider public policy based on the application of tort duty analysis. Although the imposition of a legal duty in the tort context is based, in part, on public policy, *see, e.g.*, *Calkins v. Cox Estates*, 792 P.2d 36, 39 (N.M. 1990) (stating in the negligence context, "The existence of a duty is a question of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law"), the same analytical framework does not govern cases, like this, which sound in contract. Neither the district court nor the parties have cited any authority supporting the idea that New Mexico courts, in an attempt to conform the agreement to public policy, will impose on parties to a

11

contract affirmative obligations other than the few well-recognized covenants implied by law. *See, e.g.*, *Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 309–10 (N.M. 1994) (recognizing that every contract in New Mexico contains an implied covenant of good faith and fair dealing). Indeed, doing so would be contrary to the New Mexico courts' admonition against imposing contractual obligations not clearly contemplated by the parties.[6] *See WXI/Z*, 110 P.3d at 1083. Thus, New Mexico law does not support the conclusion that public policy alone can form the basis for imposing affirmative disclosure obligations on Mr. Christy that are not set forth in the CGL Policy.

Second, the district court's analysis was based on its conclusion that, in the absence of a duty to notify Travelers of the change in business structure, Mr. Christy "would be rewarded for making a material misrepresentation, in turn incentivizing others like [Mr. Christy] to withhold information from insurers to derive greater benefits which honest disclosure would not have permitted." But the district court's

---

[6] In New Mexico, express contractual provisions may be rendered *unenforceable* based on public policy. *See, e.g.*, *Yedidag v. Roswell Clinic Corp.*, 346 P.3d 1136, 1150 (N.M. 2015) (acknowledging that parties are ordinarily allowed to negotiate the terms of their agreements and agree to any terms not prohibited by public policy); *State ex rel. King v. B & B Inv. Grp., Inc.*, 329 P.3d 658, 670 (N.M. 2014) (explaining that public policy "allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party" (internal quotation marks omitted)); *see also* 5 Williston on Contracts § 12:1 (4th ed.) (explaining that some bargains are rendered unenforceable because enforcement is against public policy); Restatement (Second) of Contracts § 178 (explaining that certain terms of a contract may be unenforceable on public policy grounds). But none of these authorities allows a court to impose *affirmative* contractual obligations not bargained for by the parties based solely on public policy.

12

assumption that Mr. Christy made a material misrepresentation was improper because the facts are disputed on this point.[7]

### B. *Material Misrepresentation*

In addition to arguing that Mr. Christy breached a contractual and public policy duty to notify Travelers about the incorporation of K&G, Inc., Travelers also maintains that Mr. Christy may not recover UM benefits under the CGL Policy because his failure to inform was a material misrepresentation.

Under New Mexico law, a misrepresentation can be the basis for a party's avoidance of contractual obligations through rescission or reformation when "the contract is based in material part" on that misrepresentation. *State ex rel. State Highway & Transp. Dep't*, 806 P.2d 32, 37 (N.M. 1991). "In order for this to occur, the recipient of the misrepresentation must show that (1) there was a misrepresentation that was (2) material or fraudulent and which (3) induced the recipient to enter into the agreement and that (4) the recipient's reliance on the misrepresentation was justified." *Sisneros v. Citadel Broad. Co.*, 142 P.3d 34, 40 (N.M. Ct. App. 2006). The parties do not seriously dispute the third or fourth prongs of the test. As such, our analysis focuses on whether Mr. Christy's silence on the issue of the formation of K&D, Inc. constituted a material misrepresentation under

---

[7] The district court found the existence of a legal duty to inform Travelers of the incorporation of K&D, Inc. based in part on its conclusion that Mr. Christy engaged in a material misrepresentation. But, as explained below, Mr. Christy's silence on the status of his business organization constitutes a material misrepresentation only if we first conclude he had a duty to inform Travelers of the change in business structure.

13

the facts of this case. The district court assumed Mr. Christy's silence on the changed form of his business was a misrepresentation under New Mexico law. Then, having assumed the existence of a misrepresentation, the district court considered whether it was material. But on these facts, we cannot conclude as a matter of law that Mr. Christy's silence rose to the level of a misrepresentation or that it was material.

**1. Material Misrepresentation Standard**

"A misrepresentation is an assertion that is not in accord with the facts."[8] Restatement (Second) of Contracts § 159. When Mr. Christy first purchased the CGL Policy, K&D was a sole proprietorship, and Travelers drafted the CGL Policy to reflect that status. Thus, Mr. Christy's original representation as to the form of his business was in accord with the facts. The issue here then is whether, during the subsequent renewal periods, Mr. Christy's silence about the change in his business structure qualified as "an assertion that is not in accord with the facts." *See* Restatement (Second) of Contracts § 159.

As explained below, to determine whether silence rises to the level of a misrepresentation, we must first analyze materiality. If information is not material, an insured has no duty to disclose in the absence of a specific inquiry. And if the insured has no duty to disclose, mere nondisclosure will not be considered an affirmative

---

[8] New Mexico courts have adopted the Restatement's formulation of law related to material misrepresentations. *See Sisneros*, 142 P.3d at 38. Accordingly, in the absence of New Mexico authority to the contrary, our discussion similarly relies on the Restatement, as well as decisions from the New Mexico courts.

14

representation. Thus, the question before us is: When does an insured have a duty to disclose changes in circumstances that occur after issuance of a policy?

The Restatement distinguishes between an affirmative misrepresentation, an act of concealment that rises to the level of an affirmative misrepresentation, and mere nondisclosure, which may be the equivalent of an affirmative misrepresentation under certain circumstances. *Id.* §§ 159–61. In cases like this involving a mere nondisclosure, the party failing to disclose must know or have reason to know that the undisclosed fact will influence the decisionmaking of the other party before the nondisclosure will be treated as an affirmative misrepresentation. *Id.* § 161; *see also id.* § 161 cmt. b ("In order to make the contract voidable . . . the non-disclosure must be either fraudulent or material. . . . [O]ne is expected to disclose only such facts as he knows or has reason to know will influence the other in determining his course of action.").

A leading treatise on insurance contracts similarly distinguishes between an affirmative misrepresentation, concealment, and mere failure to disclose:

> In the law of insurance, "concealment" is the designed and intentional withholding of any fact material to the risk which the insured in honesty and good faith ought to communicate to the insurer but which the insured *designedly and intentionally* withholds. Mere silence, however, is not concealment, *at least in the absence of a specific inquiry*, for it is the context of the surrounding circumstances which determines the legal significance of such silence.

6 Couch on Insurance § 81:21 (emphasis added). "A party applying for insurance is bound to answer truthfully all questions concerning facts material to the risk but generally has no duty where the application makes no specific inquiries." *Id.* § 84:2.

15

And although the materiality of a particular fact is a factor in deciding whether the insured should have disclosed it, "a prospective insured has no duty to inform an insurer even with respect to a material factor unless the insured has been asked about it or otherwise made to know that it is a material basis for issuance of the policy." *Id.* § 84:6. "Also, because the insured normally is a lay individual and not particularly knowledgeable in the field of insurance risks, it is unreasonable to impose on the insured a continuing duty to notify the insurer of any change which would materially affect the acceptance or continuation of the risk." *Id.* § 84:9.

For Mr. Christy's mere silence on the change in his business structure to rise to the level of an affirmative misrepresentation, Travelers must have made a specific inquiry or Mr. Christy must have known or should have known the structure of his business was material to Travelers' decision to renew the CGL Policy. Under the Restatement and Couch, the *insurer* has the obligation to inquire about those facts it considers material to its risk, rather than placing the burden on the untrained insured to disclose any and all changed circumstances that his insurer may consider significant. New Mexico's general adherence to the Restatement convinces us that its courts would place the onus of inquiry on Travelers as the insurer, rather than expecting Mr. Christy as the lay insured to divine which facts might be material to Travelers' decision to issue or renew a policy. That is, unless Mr. Christy had knowledge that the information was material to Travelers.

The Massachusetts Court of Appeals reached a similar conclusion in *Quincy Mutual Fire Insurance Co. v. Quisset Properties, Inc.*, 866 N.E.2d 966 (Mass. App.

16

Ct. 2007). In *Quincy*, the insured purchased a commercial auto insurance policy through his corporation. *Id.* at 968–69. At the time the insured purchased the policy, the application accurately reflected all material facts. *Id.* at 969. The insured renewed the policy for the next nine years, but at no time did the insurer require the insured to complete a renewal application or questionnaire. *Id.* At the renewal period, the insurer sent the insured a copy of the new policy and a letter that stated "in the event of a loss or if there is any change in conditions existing at the time this policy was written, please notify our office." *Id.* Six years after purchasing the initial policy, the insured's corporation was dissolved. *Id.* But the insured did not notify the insurer of the dissolution. *Id.* at 969–70. Subsequently, the insured made a claim on the commercial policy, which was denied for failure to notify the insurer of the dissolution of the company.

The Massachusetts Court of Appeals reviewed "whether [the insured's] failure to notify [the insurer] of [the company's] dissolution represents a material misrepresentation that increased the risk of loss to the insurer." *Id.* at 970. It answered that question in the negative, concluding that an insurer has a duty to inquire into facts and circumstances it deems material to its coverage decisions. *Id.* at 971–74. The court explained:

> Insureds are not in a position to recognize risk-enhancing circumstances as readily as the insurer, who can more easily identify and evaluate circumstances that are material to the decision to underwrite and insure the risk. Information not asked for is presumably deemed immaterial. Moreover, imposing the burden of inquiry on the insurer poses no undue burden and reduces, if not eliminates, the difficult determination of

what is, or is not, material to the risk of loss from the perspective of an insurer.

*Id.* at 973 (citation omitted).

We conclude that the *Quincy* court's analysis is consistent with the Restatement and most likely to reflect New Mexico's views on this issue. Furthermore, the cases Travelers cites as support for its argument that New Mexico would place the burden on the insured are inapposite. For example, Travelers relies on *Rael v. American Estate Life Insurance Co.*, 444 P.2d 290 (N.M. 1968), for the proposition that a failure to disclose material information constitutes a misrepresentation. But in *Rael*, the insurer's application specifically asked whether any family member had undergone any "medical or surgical advice or treatment or operations in the past 5 years." *Id.* at 291 (internal quotation marks omitted). Despite the fact that, during the five-year period, the insured's wife and daughter had both received medical treatment, including surgeries, the insured answered "No." *Id.* at 291–92. Not surprisingly, the New Mexico Supreme Court held that an insurer is entitled to true and complete answers to the questions it asks before issuing a policy. *Id.* at 292. But *Rael* did not address a situation, like the present, in which the insured truthfully answers the application questions, circumstances later change, and the insurer arguably does not make further inquiry. Because *Rael* addressed only an insured's obligation not to lie in response to a direct question from the insurer, it is not controlling here.

18

Travelers' reliance on *Rehders v. Allstate Insurance Co.*, 135 P.3d 237 (N.M. Ct. App. 2006), is similarly misplaced. Travelers argues *Rehders* stands for the proposition that an insured is presumed to know and understand the insurance significance of changing his business from a sole proprietorship to a corporation. But *Rehders* cannot be read so broadly. *Rehders* involved a commercial insurance policy issued in the name of a sole proprietorship from 1983 until 2001. *Id.* at 239–40. In September 2001, the sole proprietors notified Allstate that they had changed their business from a sole proprietorship to a corporation and requested that their policy be modified to reflect that change. *Id.* at 240. Allstate issued a new policy in the name of the corporation. *Id.* Subsequently, the proprietors' son was injured in an accident with an uninsured driver. *Id.* Under the prior policy, the son was arguably covered under the provisions relating to sole proprietorships. *Id.* But under the new policy issued to the corporation, Allstate denied coverage, asserting the son was not an insured. *Id.* The New Mexico Court of Appeals agreed with Allstate, holding the proprietors could not have reasonably expected that coverage for their son would remain the same after changing their business organization and obtaining a new policy. *Id.* at 247.

Travelers relies on *Rehders* to argue that insureds are always presumed to understand a change in business form will have insurance implications. But the *Rehders* court's holding is limited by the facts at issue there. Specifically, the insureds changed their business organization, obtained a new insurance policy that unambiguously did not provide coverage for the subsequent accident, and then

19

attempted to negate the change they had requested to obtain more favorable coverage after an accident. The *Rehders* court did not consider a situation like this case, where the same policy is in place but there has been a change in the business form of the insured. As a result, it is not controlling.

In sum, the CGL Policy may only be reformed or rendered void if Mr. Christy made a material misrepresentation by failing to disclose the change to his business form. Mr. Christy's nondisclosure will only be considered a misrepresentation if he had a duty to inform Travelers of the change. And Mr. Christy only had such a duty if the incorporation of his business was material. A finding of materiality depends on whether Mr. Christy knew or should have known that changing his business form would affect Travelers' decision to renew. Accordingly, we now consider whether the evidence presented of Mr. Christy's knowledge on this point was undisputed or instead created a material issue of fact which precludes summary judgment.

**2. Evidence**

Mr. Christy averred by affidavit that he was never informed that changing his business form could affect Travelers' decision to renew his insurance coverage. According to Mr. Christy, the annual discussions with his insurance agent focused on the number of employees and the types of vehicles used by the business. And the insurance agent testified by deposition that, although he asked Mr. Christy whether there had been any changes in the business's "operations," he never expressly asked whether the business form had changed. But Travelers points to the cover letter sent with the annual renewal notice, which states, "Please review your policy for accuracy

20

and advise . . . if any changes or additional coverages are needed." According to Travelers, this letter was sufficient to notify Mr. Christy that he should inform Travelers of any changed circumstances that might warrant a corresponding revision of the CGL Policy. It was precisely this type of generic inquiry that the *Quincy* court rejected as insufficient to place the burden on the insured to determine which specific changes might be material to his insurer. *See Quincy Mut. Fire Ins. Co.*, 866 N.E.2d at 973. And to hold otherwise would turn the Restatement approach on its head by placing the burden on Mr. Christy, the lay insured, to divine what new circumstances might necessitate "changes or additional coverages" under the existing CGL Policy.

In short, viewing all facts and taking all reasonable inferences in the light most favorable to Mr. Christy—as we must—we hold there are material facts in dispute as to whether Mr. Christy knew or should have known Travelers would consider the change in his business form material to its decisions to renew the CGL Policy. Although the undisputed facts show Travelers never specifically asked Mr. Christy about changes to his business form, the trier of fact could reasonably conclude that the annual cover letter, together with Mr. Christy's annual discussions with his insurance agent, were sufficient to place him on notice that such information would be material to Travelers. But on the summary judgment record presented to the district court, we cannot conclude as a matter of law that Mr. Christy knew of the material nature of the change in his business structure. As such, we also cannot conclude that he owed a duty to inform Travelers and, in turn, that his failure to speak in light of such a duty constituted a material misrepresentation. Accordingly,

21

the district court erred in concluding on summary judgment that Mr. Christy engaged in a material misrepresentation and in reforming the Policy on that basis. We therefore reverse the grant of summary judgment in Travelers' favor and remand for further proceedings.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, Mr. Christy argues the district court erred in granting summary judgment on his claim for breach of the covenant of good faith and fair dealing. New Mexico law recognizes that every contract imposes an implied duty of good faith and fair dealing on the parties. *Sanders v. FedEx Ground Package Sys., Inc.*, 188 P.3d 1200, 1203 (N.M. 2008). "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Id.* (internal quotation marks omitted).

Mr. Christy argues the district court erred in granting summary judgment on this claim because of the inherently factual analysis necessary for a finding of bad faith. But Mr. Christy has not satisfied his burden in opposing summary judgment on this claim. A party opposing summary judgment must do more than assert allegations constituting a claim. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1257–58 (10th Cir. 2009). To survive summary judgment, a nonmoving party "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Id.* (internal quotation marks and brackets omitted). Mr. Christy has made no effort to set forth any facts demonstrating

22

bad faith on the part of Travelers. Mr. Christy has made no effort to set forth any facts demonstrating bad faith on the part of Travelers.

Although Mr. Christy asserts a reversal of the district court's decision "necessarily requires the reinstatement of the entirety" of his complaint, Mr. Christy has failed to meet his burden in opposing summary judgment on his bad faith claim. We therefore affirm the district court's grant of summary judgment as to this claim but reverse and remand for consideration of Mr. Christy's remaining claims.

## III.    CONCLUSION

Because there is a material factual dispute as to whether Mr. Christy knew or should have known Travelers would have considered the formation of K&D, Inc. material to its decision to renew the Policy, summary judgment based on Mr. Christy's legal duty to speak was inappropriate. And because the existence of a legal duty governs whether Mr. Christy engaged in a material misrepresentation by not informing Travelers he had formed K&D, Inc., we hold the district court erred in reforming the Policy on that basis at this stage of the proceedings. Accordingly, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this decision. But because Mr. Christy has not met his burden to come forward with evidence in support of his claim for breach of the implied covenant of good faith and fair dealing, we affirm the district court's grant of summary judgment on that claim.

23